CHARLES B. GOODRICH, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Third Department, May 8, 1918.

**Railroad — negligence — collision between team and train at farm crossing — contributory negligence — attempt to cross in front of approaching train.**

Where in an action to recover for injuries to the plaintiff who, while driving a hay rack upon a wagon on a private farm crossing, was struck by the defendant's train, it appears that he knew that a fast express was due to pass within a few minutes and that when his horses' feet were over the rail of the first track he saw a train approaching on the further track at a point 600 feet away where the locomotive began to sound a whistle, but instead of swinging his team so as to clear the tracks, which he could have done, the plaintiff urged them to cross in front of the approaching train which was running over fifty miles an hour, his complaint should be dismissed as he was guilty of contributory negligence as a matter of law.

The court also disapproves a finding that the defendant was negligent.

COCHRANE, J., dissented.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 21st day of February, 1917, upon the verdict of a jury for $2,300, and also from an order entered in said clerk's office on the 24th day of January, 1917, denying defendant's motion for a new trial made upon the minutes.

*Lyon & Painter* [*H. Fred Lyon* of counsel], for the appellant.

*Lynch & Clifford* [*F. W. Clifford* of counsel], for the respondent.

H. T. KELLOGG, J.:

The plaintiff was injured in a collision with a train of the defendant which was coming easterly at the rate of fifty miles an hour on the southerly track of a set of two tracks which at the point of the accident extended easterly and westerly. He was driving down his own private farm crossing, which approached the tracks at an acute angle from the northeast.

He was standing in the middle of a hayrack upon a farm wagon which was being drawn by a pair of gentle farm horses. He stopped his horses to talk to his son at a point where the fore feet of the horses were about twelve feet from the north rail of the west-bound track. He had made the trip over this very crossing many hundreds of times, and upon this occasion knew that an east-bound express was due to pass on the southerly track within a few moments. He talked with his son for about five minutes, and discussed with him the passing of the east-bound train. The point where plaintiff stood in the wagon was thirty feet from the north rail of the north track. From this point he could see down the east-bound track a distance of about 800 feet. He saw no train approaching and started his horses toward the track on a walk, at the rate of about three miles an hour. The distance between the two tracks was eight feet, and the width of each track was five feet. When his horses' feet were over the north rail of the north track the plaintiff saw a train approaching from the west on the further track, at a point about 600 feet away, at which point the locomotive of the train began to sound a whistle, which it continued to sound until the collision. As the plaintiff was approaching the track at an acute angle so that he was facing partly in the direction of the approaching train, he could have swung his team slightly to the right and at once been clear of both tracks with wagon and horses. He was not excited, and he was in a place of perfect security. Instead of stopping his horses or turning them to the right off the track, he decided to go across ahead of the train, and having no whip began to slap his horses on their backs with the reins to urge them over. He slowly crossed the intervening space of from eight to thirteen feet to the east-bound track, when his horses were struck by the on-coming train traveling at a rate of better than fifty miles an hour, and owing to its collision with his team and wagon he was thrown in the air some distance to the north, and was more or less seriously injured.

The defendant was not negligent in running its train over this crossing at a rate of speed better than fifty miles an hour. (*Warner* v. *N. Y. Central R. R. Co.*, 44 N. Y. 465.) Defendant may have been negligent in failing to sound a warning prior

to the arrival of its train at a point some 600 feet from the crossing. However, it is unnecessary to decide this question, for the plaintiff was clearly negligent in leaving a place of perfect safety to cross the southerly track in front of a fast approaching train whose approach he discerned when · his horses were from eight to thirteen feet from the track and were moving unfrightened and undisturbed at a slow walk, and when the plaintiff himself was unexcited and capable of cool decision. This view of the case finds complete support in the case of *Getman* v. *Delaware, L. & W. R. R. Co.* (162 N. Y. 21). In that case the plaintiff's intestate was about to cross a track of a single-track railroad. He was driving a single horse at a jog, and was sitting upon a can in an open wagon. He first saw a train approaching him 200 feet away, when the head of his horse was within six feet of the nearest rail. Instead of stopping his horse he whipped him up and attempted to get across the track ahead of the train which was coming at the rate of from forty to fifty miles an hour. It was said by the court, in language which could with perfect application be used for the decision of this case: " It is clear that the intestate was not in imminent peril, unless when he saw the near approaching train, he should refuse to stop his horse. He could and should have stopped then and there; if he had stopped he would not have been in apparent danger, whether he had remained in his wagon or had jumped from it and taken his horse by the head. The highway and adjoining ground for twenty-five feet upon each side of him was nearly level. He was not confused by other tracks, trains or engines. His horse was not restive. If he was absorbed in his own thoughts so as to be less than reasonably alert to the danger of the situation; if he underestimated the speed of the train, or overestimated the speed of his horse — or, all combined — it was his misfortune, not the fault of the defendant. The situation does not support the inference that it must have appeared to him that it was dangerous for him to stop where he was, but rather that he supposed that he could safely pass the crossing; thus he voluntarily — not under the coercion of other apparent danger, for which the defendant was in fault — took the risk." In that case the plaintiff's intestate was held to have been negligent as a matter of law. It is an

authority which is controlling, the facts of which bear to the facts of this case an almost perfect parallel.

The complaint should be dismissed.

All concurred, except COCHRANE, J., dissenting.

Judgment and order reversed upon the law and facts, and new trial granted, with costs to the appellant to abide the event. The court disapproves of the finding that the plaintiff was free from contributory negligence, and the defendant was guilty of negligence.