CALEDONIAN INSURANCE COMPANY, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

Fourth Department, March 9, 1927.

**Railroads — crossing accident — action for damage to motor truck which, while stalled on railroad crossing, was struck by defendant's freight train — error to charge that rights of plaintiff's assignor and defendant were equal at railroad crossing — court should have charged, as requested, that there was no evidence to show speed of train, grade of track, or distance in which train could have been stopped — there is no evidence to show that engineer could have seen truck in time to stop train — contributory negligence not shown — doctrine of res ipsa loquitur not applicable.**

This is an action by an assignor to recover for damage to a motor truck which was struck by one of defendant's freight trains while the truck was stalled on a crossing.   At the point in question, there were crossings for three railroads within a distance of approximately 200 feet, and the line of defendant's railroad

was straight for a considerable distance in the direction from which the train was approaching. The accident occurred in the winter time when the ground was covered with snow to a considerable depth and while the wind was blowing much free snow into the air. There was no evidence introduced to show the speed of the train or the grade of the track as it approached the crossing, or the distance within which the train could have been stopped.

It was reversible error for the court to charge that the rights of the plaintiff's assignor and the rights of the defendant were equal at the railroad crossing, for the rule is that the railroad has a superior right at crossings, subject only to the giving of proper signals.

It was error for the court to deny defendant's motion to dismiss and to deny defendant's request to charge that there was no testimony to show the rate of speed of the train, the grade of the track and the distance within which the train could have been stopped; no evidence having been introduced on those questions, the court should have so charged.

Furthermore, there was nothing to show that under the circumstances attending the accident, especially in view of the weather conditions, the engineer of the train could have seen the truck on the track in time to stop the train or that he could have recognized that the truck was stalled on the crossing over the road on which his train was passing, or that the plaintiffs' assignor was guilty of contributory negligence.

Under the circumstances the rule of *res ipsa loquitur* was not applicable.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 3d day of June, 1926, upon the verdict of a jury, and also from an order entered in said clerk's office denying defendant's motion for a new trial made upon the minutes.

*Moot, Sprague, Brownell & Marcy* [*John W. Ryan* of counsel], for the appellant.

*Richard E. Jacobson,* for the respondent.

SAWYER, J. This action is to recover on an assigned claim for damage to a motor truck at a railroad highway crossing. The truck became stalled upon defendant's tracks at what is known as the Indian road crossing in the town of Cheektowaga. At that point, which is in the open country, Indian road runs north and south and is crossed by the railroad at right angles, as it also is by the Delaware and Lackawanna railroad 150 feet to the north and by the Lehigh Valley railroad 40 feet to the south. There is a slight grade from both directions up to defendant's tracks, which run from the crossing easterly in substantially a straight line for a distance of a mile to a mile and a quarter. The ground was covered with snow to a considerable depth. It was daylight and the wind was blowing much free snow into the air with consequent drifting. The truck was about six feet high and had been upon the track for four to six minutes when defendant's freight

train, coming from the east, collided with it causing the damage for which recovery is sought.    Upon proof of the foregoing, together with that of the amount of the loss, plaintiff rested, whereupon defendant moved for a nonsuit; that being denied it in turn rested and renewed its motion to dismiss which was also denied.    The case was submitted to the jury without further evidence and resulted in a verdict for the plaintiff.    The motions were upon the grounds, as stated, that there was no evidence tending to show that failure to signal, if any, was the proximate cause of the accident and that plaintiff had adduced no testimony to show that, in the exercise of reasonable care, this truck could have been discovered on the crossing, and the train, under existing conditions, stopped in time to avoid it.    In disposing of them, the court remarked:

" I think the doctrine of *res ipsa loquitur* applies in a case like this.    While the burden of proof never shifts, it is for you to show what could have been done under the circumstances, what your side of the case is.    *    *    *

" It is a question whether they should have discovered it in time to stop, is it not?    A question for the jury.    That is a straight track for a considerable distance.    The railroad had no more right at that crossing than the truck had, not a bit.    *    *    *

" It is for the jury to determine from the facts and circumstances whether it could have been stopped; whether it should have stopped; whether they should have had the train under such control at the crossing that they could have stopped."

And in its charge to the jury the court further stated: " The rights at a crossing like this are equal.    Highways were an institution before the railroad.    But the law says that the rights of people on the highway and the rights of railroad trains are equal at a crossing.    It was incumbent on the railroad company to operate its cars at a crossing with that view of the law in mind."

To this defendant's attorney excepted as he also did to the denial of the motions to dismiss.    He then asked the court to charge " that instead of    *    *    *    the rights of highway travelers on a railroad crossing being equal,    *    *    *    the railroad company has a paramount right at a crossing," which was denied.    He then requested a charge that the case was devoid of evidence to show the rate of speed at which the train approached the crossing or what the grade of the track was in the direction from which the train approached the crossing, for any distance east of the crossing; nor any evidence tending to show the distance within which the train could have been stopped with the exercise of reasonable care.    This was also denied.

Counsel then inquired if the refusal to charge was upon the ground that it was not within the province of the court to charge the jury that there was no evidence upon any particular point, when the following colloquy ensued: " The Court: Yes, I think it is for the jury to determine those things. Mr. Ryan: Even though in the view of the Court there is no evidence on the question? The Court: I do not say that there is not. That is for them to determine, whether there is any evidence, or not." Due exceptions were taken to the refusals to charge as requested and the remarks of the court.

As early as 1871 a charge that citizens and railroad corporations have the same and equal rights as to the use of a highway at a crossing was stamped with disapproval by the Court of Appeals (*Warner* v. *N. Y. Central R. R. Co.,* 44 N. Y. 465) and the rule that the right of the company for the use of such crossings is paramount to that of the public seems to have been since firmly established. (*Fleckenstein* v. *Dry Dock, etc.,* 105 N. Y. 655; *Milliman* v. *N. Y. C. & H. R. R. R. Co.,* 109 App. Div. 139; *Winslow* v. *Boston & Albany R. R. Co.,* 11 N. Y. St. Repr. 831; *Lahey* v. *Central Park, etc.,* 2 Misc. 537; *Continental Improvement Co.* v. *Stead,* 95 U. S. 161; 33 Cyc. 924.)

In the exercise of such right all that is exacted from a railroad company is suitable and timely warning of approaching trains. Any failure of defendant in this respect is not, however, presented for our consideration as the court in its charge, with consent of plaintiff, expressly eliminated that question from the case.

This paramount right of railroads to the use of highway crossings is, nevertheless, not exclusive; a person may not recklessly, carelessly or willfully obstruct the passage of its trains, but he is not absolutely bound to keep off or get off the track; if he fairly and in a reasonable manner respects the lawful rights of the corporation and then is, without fault on his part, injured by carelessness chargeable to it, he may maintain an action for damage. (*Fleckenstein* v. *Dry Dock, etc., supra; Lahey* v. *Central Park, etc., supra.*)

When the truck was driven upon defendant's tracks no interference with defendant's paramount right of use would have ordinarily been occasioned thereby and but for the untoward happening which caused it to stall no harm would have followed. Nothing is shown to justly charge plaintiff's assignor with having recklessly, carelessly or willfully obstructed the passage of defendant's cars and he is accordingly free from imputation of contributory negligence.

In its bearing on negligence of the defendant, the charge that the rights of the public and of the railroad at such crossings are equal

was beyond question prejudicial; in effect, it was a statement that defendant was required to approach the crossing with the same degree of care demanded of the operator of a road vehicle, *i. e.*, its train under control and with close and constant observation of the road. This is not the law and such a charge in connection with the theory upon which the case was submitted to the jury, must have been especially harmful to defendant.

Equally serious is the question presented by the denial of the motions to dismiss and of defendant's request to charge that there was no testimony to show the rate of speed at which the train approached the crossing; the grade of the track or the distance within which the train could have been stopped in the exercise of reasonable care. As the case went to the jury it contained nothing to justify a finding of negligence other than the happening of the accident and the circumstances above recited.

The meaning of the maxim *res ipsa loquitur* is that the *res*, the thing, of itself, is evidence of negligence *prima facie*. (*Ennis* v. *Gray*, 87 Hun, 355; *Griffen* v. *Manice*, 166 N. Y. 188; *Cunningham* v. *Dady*, 191 id. 152, 155.)

Plaintiff argues from the fact that eastward from the crossing for a mile or more defendant's tracks are substantially straight, in the exercise of the care with which defendant was chargeable, its engineer and fireman were in duty bound to have observed plaintiff's predicament and the dangers inherent thereto in time to have stopped its train and avoided the collision. This does not necessarily follow. The case is silent as to the speed at which the train was being operated or as to the distance in which it could have been stopped under the conditions there prevailing. No duty rests upon the operator of a train to stop or even slacken his speed in the absence of seeming danger. Just when defendant's engineer first saw the truck does not appear, but that he did see it, when some considerable distance away, and acted accordingly is made manifest, for this heavy freight train, twelve to fourteen hundred feet in length, was brought to a stop when only about half its length had passed the crossing. A strong wind was blowing considerable snow about in the air; the ground either side of the track was deeply covered with snow as well as some upon the track itself; all of this would tend to obstruct the vision. Only a few feet to the south of the crossing were the tracks of the Lehigh Valley railroad while but a little further to the north were located those of the Delaware and Lackawanna railroad. Can it be said as a matter of law that the engineer was bound, in such weather conditions, not only to see the truck in time to stop his train but

to distinguish upon which of these crossings it stood, or in fact to readily determine whether it was standing or moving?

If plaintiff's evidence is to be believed, the train must have been proceeding at a much higher rate of speed than is usual with trains of that character or else vision to the eastward of the crossing was so obscured as to render view along the track, beyond a short distance, impossible; the driver of the truck testified that only about fifteen or twenty seconds before the crash came he looked down the track to the east for the express purpose of discovering if there was danger from trains and saw nothing. At whatever distance the operator of the train could have seen the truck it would seem equally possible for that witness to see the train, which is a much more prominent object. If the train was traveling at the rate of fifty miles an hour, an unusual speed for freight trains, it would have covered approximately fifteen hundred feet in twenty seconds, or but little over its own length, and this would be proportionately more or less as its speed was in excess or otherwise of that rate. Common observation teaches us that such a train could not be stopped within its own length; it follows that if the witness is right in his estimate of the time when he looked, and was then unable to see the train, it must have been impossible to have stopped it in time to avoid the accident, after the truck came into view.

Negligence is not to be inferred from speed alone. (*Warner* v. *N. Y. Central R. R. Co., supra; Goodrich* v. *Erie R. R. Co.,* 183 App. Div. 189; *LaGoy* v. *Director General,* 191 id. 680, 683.) We are not aware of any presumption that the driver of a locomotive is not, at any given time, faithful in the performance of his duty. Any presumption upon the subject that may exist is to the contrary and favors the employee.

The doctrine of *res ipsa loquitur* " is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it." (*Griffen* v. *Manice, supra,* 193.)

Where such an inference of negligence may not be reasonably drawn, or where the surrounding circumstances may be as compatible with due care, it cannot be said as a matter of law that the facts are sufficient to establish negligence *prima facie.* (29 Cyc. 624.)

We find ourselves unable to say that this record presents an inference of negligence to the exclusion of any other, and are, therefore, of the opinion that the denial of defendant's motions to

dismiss. as well as the matters connected with the charge to which reference has been made were each reversible error.

The judgment should be reversed, with costs to appellant to abide the event, and a new trial directed.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment and order reversed on the law and facts and new trial granted, with costs to appellant to abide event.