Donna CLOUSE, Defendant-Appellant,

v.

Georgia Lee FIELDER and James Fielder, Plaintiffs-Appellees.

No. 1–1180A320.

Court of Appeals of Indiana, First District.

Feb. 15, 1982.

Rehearing Denied April 12, 1982.

**150**

Thomas G. Brenton, Paul T. Brenton, Brenton & Brenton, P. C., Danville, for defendant-appellant.

Joseph B. Barker, Martinsville, for plaintiffs-appellees.

RATLIFF, Presiding Judge.

### STATEMENT OF THE CASE

Donna Clouse (Clouse) appeals the judgment of the trial court entered in favor of Georgia Lee Fielder (Georgia) for one thou-

sand nine hundred dollars ($1900) for property damage and twenty thousand dollars ($20,000) for personal injuries arising from an automobile collision. James Fielder (James) cross appeals the trial court's judgment in favor of Clouse on his claim for loss of his wife's services as a result of this occurrence. We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

An automobile collision occurred between Georgia and Clouse on Thompson Road in Morgan County, Indiana, on August 27, 1973. Georgia was driving in a northerly direction on Thompson Road and Clouse was driving in a southerly direction when the cars collided. Georgia suffered injuries to her knees, abdomen, chest, face, and forehead as a result of the collision.

On June 9, 1975, Georgia and James filed suit in Morgan Circuit Court against Clouse. They alleged Clouse was driving her automobile on the wrong side of the road when the collision occurred. Georgia sought recovery of damages from Clouse for her personal injuries and property damage, and James sought recovery of damages for loss of his wife's services. The action was tried by a jury which reached a verdict in favor of Georgia for one thousand nine hundred dollars for property damage and twenty thousand dollars for personal injuries. The trial court entered the following judgment on the jury's verdict:

"Trial by jury was conducted in this cause beginning April 21, 1980 and ended April 23, 1980. This jury rendered its verdict for Georgia Fielder and against the Defendant for Twenty thousand ($20,000.00) Dollars for her personal injuries and for Georgia Fielder and against the Defendant for property damages for Nineteen hundred ($1,900.00) Dollars. The jury was polled by the Defendant's counsel and the verdicts were unanimous.

"No verdict was rendered by the jury either for or against the Defendant on the Plaintiff James Fielder's claim against the Defendant, Donna Clouse, and it is Therefore Ordered that judgment be entered for defendant Donna Clouse and against James A. Fielder.

"Final judgment is therefore now entered for Plaintiff Georgia Fielder and against Defendant, Donna Clouse in the sum of Twenty-one thousand nine hundred ($21,900.00) Dollars.

"Copies of this Final Judgment are ordered sent by the Clerk of this Court to all counsel of record so that appeal may be taken by either party upon all issues resolved by this Judgment.

"ALL OF WHICH IS ORDERED, ADJUDGED AND DECREED this 16 day of May, 1980."

Clouse and James filed motions to correct errors which were overruled by the trial court. This appeal and cross appeal then were pursued.[1]

## ISSUES

Clouse raises the following issues, which in the interest of clarity we have restated, for our review:

1. Whether the trial court erred by not granting a mistrial when Georgia and her counsel mentioned insurance during the direct examination of Georgia.

2. Whether the trial court erroneously admitted Georgia's Exhibit 12 into evidence over Clouse's objection.

3. Whether the trial court erroneously denied the admission of Clouse's Exhibit F into evidence and erroneously denied Clouse the use of Exhibit F on cross-examination of Georgia's expert witness.

4. Whether the trial court's mispronunciation of the words "causal" and "causally" during the reading of final instructions is grounds for reversal.

James in his cross appeal raises the following issue:

5. Whether the trial court could enter judgment against him without entering a directed verdict when the jury had returned no verdict on his claim.

1. This appeal was not assigned to this office until January 8, 1982.

*Issue One*

■ Georgia, on direct examination, testified about a conversation at the scene of the accident among herself, Clouse, and Earnshaw, an Indiana State Trooper:

"A. Mr. Earnshaw said to Mrs. Clouse and myself, it's very hot out here so we'll sit in my car. He was in the front seat; we were in the back seat. She was on the driver's side of the back seat; I was on the passenger's side of the back seat, and while he was making out his report, he was talking, and he asked—you heard what he said—then he said . . .

BY MR. PAUL BRENTON: I think we're going to have error here. We've got a jury to decide this case . . .

BY COURT: I don't think we're going to have any error at all.

BY MR. BRENTON: Joe knows better.

BY MR. BARKER: There's no error here.

BY COURT: They were all in the presence of each other. She can say what was said and somebody else can say something else. This is her testimony as she remembers it. Go on.

A. Mr. Earnshaw said to Mrs. Clouse—well, first he asked if there were any internal injuries or if anyone had been taken to the hospital or anything and we told him no. All I had was the bruises that was coming up on me. At that time, I had a bit goose-egg thing coming up on my forehead, so then Mr. Earnshaw proceeded and he said, I quote . . .

BY MR. TOM BRENTON: To which we will object, Your Honor, for purposes of the record, anything that Mr. Earnshaw said.

BY COURT: As far as what he said, as far as his opinion of the wreck and all that kind of thing, You're ____.

BY MR. PAUL BRENTON: That's what we're getting into. He's already said he didn't remember saying anything.

BY MR. BARKER: Your Honor, he's available for recall and it's not hearsay. She was there; Mr. Earnshaw can come back if they want him to come back.

BY MR. TOM BRENTON: I don't believe, Your Honor, that there's any law in the State of Indiana that says the officer can testify to what he thought the cause was and that's what we're getting at.

BY COURT: Well, I don't know what he said, I wasn't there, no one else was there[.]

BY MR. BARKER: Do you want to ask any preliminary questions?

BY COURT: ____ whose fault or whose not fault it was is not permissible. Now as far as what the defendant said in his presence, in your presence, you may testify.

Q. Now don't—if the police officer indicated who's at fault, don't state that.

A. We were in his car and he was making out his report and he asked were there any internal injuries, was anyone taken to the hospital. We both told him no. Then he asked Mrs. Clouse her insurance company . . .

BY MR. PAUL BRENTON: Now, Your Honor, if she's going to talk about—this is improper. ____ and we ask for a mistrial at this time. After fourteen objections, he does it deliberately.

BY COURT: Well, I'll admonish the jury immediately to disregard anything about insurance. There's no place in this case . . .

BY MR. PAUL BRENTON: That's right, no place in this case.

BY COURT: Now any more on that, I will declare a mistrial.

Q. Don't mention anything about insurance.

A. Okay.

Q. You can say . . .

BY MR. PAUL BRENTON: He's already said it, Your Honor, ____ this case would be mistried.

BY COURT: Does the jury understand my admonition at this time? Any reference to insurance has no place in the trial. The only question that was on

voir dire related to insurance and you answered that. That still has no place in the trial actually according to our higher courts. Now, proceed."

Record at 211–15.

Clouse contends on appeal the trial court's failure to declare a mistrial is reversible error. Georgia counters that the trial court did not abuse its discretion when it decided not to declare a mistrial. Any potential error, the Fielders state, was cured by the trial court's admonishments to the jury.

■ Generally, any evidence or remarks about liability insurance in a negligence case is inadmissible. *Lamb v. York,* (1969) 252 Ind. 252, 247 N.E.2d 197; *Wiles v. Mahan,* (1980) Ind.App., 405 N.E.2d 591; *Gardner v. Lake Eliza Resort,* (1979) Ind. App., 390 N.E.2d 666; *Herman v. Ferrell,* (1971) 150 Ind.App. 384, 276 N.E.2d 858; *Rust v. Watson,* (1966) 141 Ind.App. 59, 215 N.E.2d 42, *reh. denied* 217 N.E.2d 859, *trans. denied.* As stated by Judge Hunter in *Rust v. Watson,* (1966) 141 Ind.App. 59, 76, 215 N.E.2d 42, 51:

> "The rationale of these rulings seems to be that only evidence which is pertinent to the issues presented by the case is admissible. The underlying consideration is the presumption that if the jury has cognizance of the fact that the defendant will not bear the incident of the judgment, the jury wil[l] be prejudiced in favor of an excessive verdict."

Although generally inadmissible, evidence of insurance coverage will be admitted when the fact of coverage is relevant to a material issue. *Wiles v. Mahan, supra.* When inadmissible evidence of insurance coverage is interjected into a trial, the trial court may withdraw the case from the jury or admonish the jury. *Gardner v. Lake Eliza Resort, supra; Herman v. Ferrell, supra.* However, a deliberate attempt by counsel to interject insurance into a case constitutes reversible error. *Gardner v. Lake Eliza Resort,* (1979) Ind.App., 390 N.E.2d 666.

Clouse, citing us to *Gardner, supra,* contends the interjection of insurance in this case constitutes reversible error since it was done deliberately and in bad faith. In *Gardner,* Lake Eliza's attorney elicited the fact that the defendant, Lake Eliza, carried no liability insurance to cover a judgment in the case. This testimony was not intentionally elicited. However, Gardner's counsel objected and moved for a mistrial, which was overruled. Lake Eliza's counsel then reiterated the lack of insurance in a question which asked whether a judgment for the plaintiff would not be paid by any type of insurance. A second objection and request for mistrial, by Gardner's counsel, were overruled. This court, on appeal, found the trial court had abused its discretion when it failed to declare a mistrial.

Although counsel in the present case did make two objections and motions for mistrial, we do not believe this number automatically requires the same result as this court held in *Gardner v. Lake Eliza Resort,* (1979) Ind.App., 390 N.E.2d 666. An examination of Georgia's testimony shows that her trial counsel did not intentionally interject insurance into the case. The statement by Georgia that Earnshaw asked Clouse her insurance company was not intentionally elicited by Georgia's counsel. The trial court properly admonished the jury that insurance had no place in the case and should be disregarded. The subsequent statement by Georgia's counsel to Georgia to not mention anything about insurance was not made in bad faith. Clearly, counsel was concerned that Georgia might voluntarily mention something about insurance coverage or an insurance company and wanted it understood that she was not to do so. Unlike the statement by Lake Eliza's counsel in *Gardner v. Lake Eliza Resort, supra,* the statement by Georgia's counsel was innocuous. It did not tell us whether or not Clouse did in fact have insurance. Indeed, even after Georgia's statement, we do not know whether Clouse had insurance.

Having found neither a deliberate attempt to interject insurance into this case nor a showing of bad faith,[1] we hold the trial court did not abuse its discretion in failing to withdraw the submission of the

case from the jury. The trial court twice properly admonished the jury to disregard any evidence of insurance. Clouse has made no showing that these admonishments were insufficient to cure any possible prejudicial error.

*Issue Two*

Approximately one month after the collision involving Georgia and Clouse, Georgia was injured in an unrelated automobile accident. Doctor J. Robert Coughenour treated Georgia for her injuries suffered in both accidents. Doctor Coughenour's own records did not clearly reflect which portion of Georgia's bill was related to the collision at issue; therefore, Dr. Coughenour made a list detailing the expenses relating to Georgia's injuries from the accident with Clouse, denominated Exhibit 12, and a list of expenses from the second, unrelated accident, denominated Exhibit 13. Exhibit 13 was not admitted into evidence. Before Exhibit 12 was admitted into evidence, Dr. Coughenour stated the charges in the exhibit included treatment for illnesses other than the injuries caused by the accident. For example, if Georgia visited Dr. Coughenour for her injuries and she also had a cold, he would treat Georgia both for her injuries and cold and only charge her one fee. Clouse's counsel objected to the admission of Exhibit 12 on the grounds that "this is not connected with this accident and is not admissible." Record at 339. After the objection by Clouse's counsel, Dr. Coughenour testified that seventy-five percent of the list of charges on Exhibit 12 were attributed to the accident between Georgia and Clouse and wrote the appropriate amount on the exhibit. The trial court admitted Exhibit 12 with that amendment and over objection by Clouse's counsel.

On appeal Clouse contends Exhibit 12 was not admissible for two reasons. First, she contends the necessary foundation for admission of the exhibit was incomplete. Second, she states the exhibit contained information which was irrelevant to the present case and served to confuse the jury.[2]

■■ Georgia contends we need not discuss Clouse's first objection because Clouse failed to object to the admission of the exhibit on the grounds of an improper foundation. It is well recognized in this state that the grounds for objection on appeal to the admission of the evidence must be the same as the grounds asserted in the trial court. *Gradison v. State,* (1973) 260 Ind. 688, 300 N.E.2d 67; *cf., Glen Park Democratic Club, Inc. v. Kylsa,* (1966) 139 Ind. App. 393, 213 N.E.2d 812, *trans. denied; Ellis v. Haines,* (1963) 134 Ind.App. 528, 188 N.E.2d 835 (grounds for objection to a question in the trial court must be the same as those asserted on appeal). Since Clouse did not assert at trial an improper foundation of Exhibit 13 as grounds for its inadmissibility, we will not consider her argument on appeal.

■ Clouse's contention that Exhibit 12 contained irrelevant information and served to confuse the jury is not persuasive. Any irrelevant information was eliminated by Dr. Coughenour's testimony that seventy-five percent of the charges were related to the collision between Clouse and Georgia and by the amendment of Exhibit 12 to reflect the new total of five hundred fifty-one dollars and twenty-five cents ($551.25). Furthermore, we fail to see how Exhibit 12 was confusing to the jury. When Exhibit 12 was admitted, the trial court, Dr. Coughenour, and Clouse's counsel all stated that only seventy-five percent of the charges listed on Exhibit 12 pertained to the collision, and the figure of five hundred fifty-one dollars and twenty-five cents ($551.25) was written on the face of the exhibit.

Finally, Clouse makes a cursory argument that Exhibit 12 was inadmissible because the percentage of Dr. Coughenour's bill attributable to the first accident is based on speculation and conjecture. Inas-

**2.** Exhibit 12 is not contained in the record of proceedings filed with this court. Although a writ of certiorari for Exhibit 12 was filed with this court, it was overruled. Notwithstanding the lack of Exhibit 12 in the record of proceedings, we will review this issue. Ind.Rules of Procedure, Appellate Rule 7.2(C).

much as this objection was not raised in the trial court, we will not consider it on appeal. *Gradison v. State, supra.*

*Issue Three*

■ After the automobile accident with Clouse, Georgia complained of abnormal vaginal bleeding to Dr. Coughenour. He treated her frequently for the lower abdominal pain and vaginal bleeding and finally referred her to Dr. George Belshaw, a surgeon. Doctor Belshaw performed a hysterectomy on Georgia on April 24, 1974. During his testimony, Dr. Coughenour opined that the abdominal pain, vaginal bleeding, and resultant hysterectomy were caused by the accident between Clouse and Georgia. On cross-examination, Clouse's counsel attempted to introduce into evidence and cross-examine Dr. Coughenour about an operative note made by Dr. Belshaw. Georgia's counsel objected to the use of the operative note on cross-examination and the offer to admit the note into evidence on the grounds of hearsay. The court sustained Georgia's objection, and Clouse contends this action by the trial court was erroneous. She states she was entitled to cross-examine Dr. Coughenour on the factual basis of his opinion that Georgia's hysterectomy was necessitated by her injuries received in the automobile accident. Furthermore, she contends Exhibit A, Dr. Belshaw's surgical note, was not hearsay evidence, but was offered to impeach Dr. Coughenour.

■ A trial court has considerable discretion in the scope of cross-examination, and we will reverse the trial court's determination of the scope of cross-examination only for abuse of discretion. *Lovko v. Lovko,* (1978) Ind.App., 384 N.E.2d 166; *trans. denied; Gradison v. State,* (1973) 260 Ind. 628, 300 N.E.2d 67. The trial court also has discretion in the admission or rejection of evidence. *Smith v. Crouse-Hinds Co.,* (1978) Ind.App., 373 N.E.2d 923, *trans. denied,* 392 N.E.2d 1168 (1979) (Givan, C. J., dissenting). Any error in the admission or rejection of evidence justifies reversal if the error relates to a material matter or is of a character to substantially affect the rights of the parties. *Lovko v. Lovko, supra.*

■ Generally, it has been regarded that a direct opinion by an expert based upon reports that were not in evidence or were not admissible as substantive evidence under the hearsay rule were excludable. McCormick on Evidence § 15 (2d Ed. 1972). The basis for this rule was the inability of the jury to determine the credibility of and weigh the evidence of the expert's informants. However, Indiana has rejected this rule and allows an expert to rely upon hearsay testimony along with personal observation to formulate an opinion. *Smith v. State,* (1972) 259 Ind. 187, 285 N.E.2d 275, *cert. denied* 409 U.S. 1129, 93 S.Ct. 951, 35 L.Ed.2d 261 (1973); *Kranda v. Houser-Norborg Medical Corp.,* (1981) Ind.App., 419 N.E.2d 1024, *trans. denied; Gooch v. Hiatt,* (1975) 166 Ind.App. 521, 337 N.E.2d 585, *trans. denied; Rosenbalm v. Winski,* (1975) 165 Ind.App. 378, 332 N.E.2d 249, *trans. denied; Trinity Universal Insurance Co. v. Town of Speedway,* (1965) 137 Ind.App. 510, 210 N.E.2d 95. However, the hearsay relied upon by the expert must be the type which is customarily relied upon by such experts. *Gooch v. Hiatt, supra.* Furthermore, "the observations or opinions of one not present at trial are hearsay and cannot be introduced to confirm or reinforce an expert witness's testimony where they are offered to show the truth of the matters asserted therein and where the expert arrived at his opinion independently of them." *Indiana & Michigan Electric Co. v. Hurm,* (1981) Ind. App., 422 N.E.2d 371, 379–80, *trans. denied.*

Clouse argues Dr. Coughenour relied upon the surgical note in forming his opinion and thus she is entitled to cross-examine him about the note. If the surgical note had been relied upon by Dr. Coughenour to form his opinion, we would agree with Clouse, for the jury should have the right to know which opinions were relied upon by an expert and why. However, Dr. Coughenour stated he did not rely upon the surgical note in forming his opinion. Clouse cites us to Dr. Coughenour's testimony that the note bore out his findings to show the doctor relied upon the surgical note. We do not find this testimony to show Dr. Coughenour

relied upon the surgical note; rather, it shows Dr. Coughenour's previously formed opinion was sustained by the surgical note.

The question then becomes whether an expert can be cross-examined about hearsay medical records on which he or she did not rely. Although we have been unable to find any Indiana decisions directly on point, *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67, resolved a similar issue. In *Gradison*, an eminent domain case, Robert Sells, an expert on real estate values, testified about the valuation of the condemned land based upon his appraisal. He acknowledged that his appraisal included an analysis of potential income to be generated from the mining of sand and gravel on the real estate. However, he testified he disregarded the income analysis because he considered it too speculative and instead used the market data approach to arrive at his valuation. The landowner's counsel asked Sells to give the valuation under the income method, and the State objected. This objection was sustained. On appeal, the landowner contended the trial court erroneously denied him the right to cross-examination. Our supreme court found the trial court had not erred in its ruling since the witness did not rely upon the income method in making his valuation. Similarly, we find the trial court did not abuse its discretion in disallowing cross-examination of Dr. Coughenour about the hearsay surgical note upon which he did not rely and which was not admitted into evidence.

Finally Clouse argues the operative note should have been admitted into evidence. She states the note was not hearsay evidence because it was not offered to show the truth of the matters asserted therein, but to impeach Dr. Coughenour's opinion regarding the hysterectomy. We find Clouse's argument to be misplaced.

Five main lines of attack upon a witness's credibility exist. They are (1) prior inconsistent statements; (2) bias; (3) character of the witness; (4) a defect in the witness's capacity to observe, remember, or recount the matters about which he or she testifies; and (5) proof by other witnesses that the material facts are otherwise than testified to by the witness. McCormick on Evidence § 33 (2d Ed. 1972). The operative note in this case clearly was not used to show bias, to impeach the character of Dr. Coughenour, or to show a defect in his capacity to observe, remember, or recount. Neither does the note constitute a prior inconsistent statement since it was not made by Dr. Coughenour. Thus, the only line of attack upon Dr. Coughenour's credibility which this note constitutes is proof by another witness that the material facts are otherwise than as testified by Dr. Coughenour, *i.e.*, contradiction. In order to contradict or impeach Dr. Coughenour's testimony regarding the hysterectomy, Clouse sought to introduce the surgical note to establish the hysterectomy did not result from the accident. It is true that if the note so proved those facts, the testimony of Dr. Coughenour would be impeached or contradicted, and the jury would be required to assess the credibility of the witnesses. However, for such a contradiction to exist, the facts as asserted in the note must be taken as true. Since the surgical note was a statement made by an out-of-court declarant which was offered to prove the truth of the statement and rested for its value on the credibility of the out-of-court declarant, the trial court properly refused its admission into evidence. *D.H. v. J.H.*, (1981) Ind.App., 418 N.E.2d 286.

*Issue Four*

■ The trial court when reading the final instructions to the jury mispronounced some words in the instructions. Instead of stating "causal connection" as contained in instructions Nos. 5 and 9, the trial court stated "casual connection." Clouse contends these terms are diametrically opposed and although the misreading of the instructions was inadvertent on the part of the trial court, it constitutes fundamental prejudicial error. Georgia counters that this issue is waived since Clouse failed to object at trial to the misreading of the instructions. Clouse, however, states this issue is not waived because objection to the trial court would be improper since instructing

the jury is solely within the province of the judge.

We agree with Clouse that the trial court has the duty to instruct the jury as to the law of the case. *Board of Commissioners of Co. of Vanderburgh v. Flowers*, (1964) 136 Ind.App. 597, 201 N.E.2d 571, *trans. denied* ; Ind.Rules of Procedure, Trial Rule 51(B). However, we find her argument that any objection to the misreading of the instruction would be improper to be incorrect. Ind.Rules of Procedure, Trial Rule 51(C) states in part:

> "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Clearly, under T.R. 51(C) a failure to object to an erroneous instruction waives the error. *Accord, Ralston v. State*, (1980) Ind. App., 412 N.E.2d 239, *trans. denied; United Farm Bureau Family Life Insurance Co. v. Fultz*, (1978) Ind.App., 375 N.E.2d 601, *trans. denied.* Furthermore, since T.R. 51(C) provides that the objection is to be made before the jury retires and counsel will be provided the opportunity to make the objection out of the hearing of the jury, an objection during the reading of instructions is not foreclosed. Indeed, in *Satz v. Koplow*, (1979) Ind.App., 397 N.E.2d 1082, *trans. denied*, counsel for one of the parties mistakenly believed the trial judge was not going to give a certain instruction and failed to object to the instruction in the trial court. On appeal, this court held the misunderstanding on the part of the trial counsel did not excuse the failure to timely object to the instruction and stated:

> "The court clearly intended to give tendered instruction number 9 and never mislead [sic] or confused counsel. The responsibility for the misunderstanding must fall on appellant's shoulders. Additionally, we note appellant's counsel sat mute while the now contested instruction was read to the jury. Although we do not think it would have been good trial strategy to vehemently object to the instruction during the reading of the jury instructions, we believe counsel could have requested authorization to approach the bench and discreetly made his objection known. This would have had a minimum disruptive effect on the jury and would have preserved error despite counsel's initial misunderstanding regarding the instruction."

*Id.* at 1087.

We can appreciate Clouse's deference to the trial court; however, such a deference does not excuse her failure to direct the trial court's attention to its erroneous reading of the instructions. If Clouse wanted to predicate error on appeal upon the misreading of the instructions, she should have properly preserved the error by making an objection in the trial court.

 Finally, Clouse argues the erroneous reading of the instructions constitutes fundamental error. She bases this argument upon the contention that neither party had the right to object during the reading of the instructions. Since we have already held that not only would it be proper but also it was necessary for Clouse to object during the reading of the instructions, Clouse's argument about fundamental error must fail.

The doctrine of fundamental error was discussed by this court in *United Farm Bureau Family Life Insurance Co. v. Fultz*, (1978) Ind.App., 375 N.E.2d 601, *trans. denied.* The trial court had given an instruction which shifted the burden of proof on one issue, and Farm Bureau had not objected to the giving of this instruction. On appeal, Farm Bureau contended the shifting of the burden of proof deprived it of a fair trial and due process of law such that the deprivation constituted fundamental error. In deciding the error was not fundamental, this court stated:

> "Farm Bureau misconstrues the meaning of fundamental error. Fundamental error is not synonymous with prejudicial error. It is correct to say that fundamental error is always prejudicial or harmful

error, but prejudicial error is not always fundamental error. If it were, then every time an error was committed which was prejudicial to a party's case, that party could raise such error for the first time on appeal without having made any effort to object at trial. As a result the trial court would not have had an opportunity to correct the error before judgment was entered. A rule of law which equates fundamental error with prejudicial error would place an unduly heavy burden upon trial court judges and would give generous accommodation to lazy or incompetent lawyers.

"Fundamental or plain error results only where a statement is made or an act is done which results in prejudicial error that goes to the very heart of a party's case and where that statement or act is wholly outside of the preventive or corrective powers of that party.

"The error complained of by Farm Bureau was not fundamental error because it could easily have been corrected or, at least, preserved for appeal, if Farm Bureau had made a timely objection. Farm Bureau has not asserted general incompetence on the part of its counsel at trial, and since no objection was made at trial, Farm Bureau has preserved no error for this court to review."

*Id.* at 610–11.

In the present case, the alleged error was not outside the preventive or corrective powers of Clouse; therefore, it does not constitute fundamental error. Furthermore, since Clouse did not tender an objection to the trial court about the misreading of the instructions, she has preserved no error for this court to review.

*Issue Five*

James contends in his cross appeal that the trial court erred by entering a judgment against him when the jury had failed to enter a verdict on his claim. He states that an absence of a finding by the jury for or against a party having the burden of proof does not give rise to an inference that the burden was not met. Clouse argues James did not preserve this question for

appeal since he made no objection to the verdict form or the verdict. She states that the proper method of handling a defective verdict is to request the trial court to send the jury back for further deliberation and that James did not make such a request.

We agree with Clouse that a method of handling a defective verdict is to request the trial court to send the jury back. *See American Home Products Corp. v. Vance,* (1977) 173 Ind.App. 631, 365 N.E.2d 780, *trans. denied.* However, James is not challenging a defective verdict since there was no verdict rendered on his claim. Instead, he is challenging the trial court's action of entering judgment when the jury did not return a verdict. This issue is properly before us since it was raised in James' motion to correct errors.

Clouse contends the jury's verdict was not defective, but could be reasonably construed by the trial court to mean the jury assessed no damages in favor of James. James, on the other hand, argues that the absence of a verdict cannot be construed as a verdict for either party.

The question of what constitutes a defective verdict was discussed in cases dealing with a motion for *venire de novo.* Although the motion *venire de novo* has been abolished by Ind.Rules of Procedure, Trial Rule 50(E), the law as established in cases dealing with such a motion has been used as a guide for this court in dealing with a defective verdict. *See Giles v. Fortune,* (1973) 156 Ind.App. 664, 298 N.E.2d 34, *trans. denied.* Clouse's statement that a verdict is good if the court can understand it is well taken. As stated by Judge Enloe in *Town of Hobart v. Casbon,* (1924) 81 Ind.App. 24, 27, 142 N.E. 138, 140:

"In *Kelley v. Bell* (1909), 172 Ind. 590, 88 N.E. 58, it was said: 'The rule in this State is, that a motion for *venire de novo* will not be sustained, unless the verdict is so defective and uncertain upon its face that no judgment can be pronounced upon it. A verdict, however informal, is good if the court can understand it. It is to have a reasonable intendment, and is to receive a reasonable construction, and

must not be avoided, except from necessity.' In this case, the verdict was for the appellee; there was no uncertainty as to that feature thereof; if there was any uncertainty therein, it was as to the *amount* of the damages assessed, and we find the appellant herein, in his fourth assigned error, insisting that this verdict was good as an assessment of damages in favor of the appellee in the sum of $22.50, and that the court committed reversible error in not modifying said judgment as requested by it. If said verdict was sufficient, as to the amount of damages assessed, to authorize a judgment against appellant, *in any sum*, a motion for a *venire de novo* would not lie; such motion is proper only when the verdict is so defective that *no* judgment can be rendered upon it. 2 Watson's Revision Works' Practice § 1879, and authorities cited. The court did not err in overruling said motion."

However, as stated by the trial court there was no verdict rendered by the jury for or against either party in the present case. Record at 97. Therefore, the rule set out in *Town of Hobart v. Casbon, supra*, in which case there was a verdict for one of the parties, is not applicable to the present case.

In *Maxwell v. Wright*, (1903) 160 Ind. 515, 67 N.E. 267, the appellant brought an action on a promissory note against Monroe, Henry, and Cyrus Wright. Monroe Wright was defaulted, and the case was submitted to the jury on the appellant's claim against the other two defendants. The jury returned a verdict for Henry Wright. Appellant filed a motion for a *venire de novo*, which was overruled. On appeal, our supreme court, in reversing the trial court's judgment, stated:

"[I]n the general verdict the jury is required, under the instructions of the court as to the law of the case, to find generally from the facts proved and unproved, whether the plaintiff or defendant has succeeded on the issues made by the pleadings. Hence, when the jury fails to find for the plaintiff or defendant on an issue between the parties, it is apparent from the verdict that the jury

has stopped short of a full determination of the case, and the verdict is therefore ill and defective, and subject to a *venire de novo*. *Crouch v. Martin*, 3 Blackf. 256; *Wright v. State, ex rel.*, 8 Blackf. 385; *Bosseker v. Cramer*, 18 Ind. 44; *Jenkins v. Parkhill*, 25 Ind. 473, 475; *Whitworth v. Ballard*, 56 Ind. 279, and cases cited; *Leeds v. Boyer*, 59 Ind. 289."

*Id.*, 160 Ind. at 518–19, 67 N.E. at 268. Thus, when a jury fails to return a verdict on all the issues between the parties or as to all parties in the case, the verdict is so defective that the trial court cannot enter judgment upon it. *Grossman v. State*, (1961) 241 Ind. 369, 172 N.E.2d 576; *Maxwell v. Wright*, (1902) 160 Ind. 515, 67 N.E. 267. In the present case, the trial court's judgment cannot be sustained as a judgment upon a verdict since no verdict was rendered.

Because our standard of review of a general judgment requires affirmance of the trial court's judgment if there is any legal theory upon which the trial court's action may be sustained, *Llewellyn v. Beasley*, (1981) Ind.App., 415 N.E.2d 789, we feel we must discuss the issue of whether the trial court's judgment constitutes a judgment on the evidence.

A trial court may enter a judgment on the evidence for either party even after the discharge of the jury. Ind.Rules of Procedure, Trial Rule 50; Civil Code Study Commission Comments, 3 W. Harvey, Indiana Practice at 366 (1970). Trial Rule 50(A) specifically provides that the trial court may enter such a judgment at any time before the motion to correct errors is required to be made or if made, before a ruling on the motion. However, a judgment on the evidence should be entered only when "there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof." *Ortho Pharmaceutical Corp. v. Chapman*, (1979) Ind.App., 388 N.E.2d 541, 544, *trans. denied*. If there is any evidence or reasonable inference to be drawn from the evidence in

support of the essential elements of the claim or if reasonable persons might differ, a judgment on the evidence is improper. *Searcy v. Manganhas,* (1981) Ind.App., 415 N.E.2d 142, *trans. denied.* Inasmuch as the record contains testimony by James about his loss of his wife's services and consortium, the trial court's judgment cannot be sustained as a judgment on the evidence.

Since the trial court erroneously entered a judgment upon a defective verdict and this judgment cannot be upheld as a judgment on the evidence, we must reverse the judgment as to James' claim for relief.

Clouse contends that upon remand a new trial must be granted as to the whole case and cites us to *Grossman v. State,* (1961) 241 Ind. 369, 172 N.E.2d 576. It is true that our supreme court in *Grossman* stated the new trial must be awarded on all the issues between the parties. When a new trial was granted in cases dealing with the motion for a *venire de novo,* the new trial would be granted as to all the issues. *Grossman v. State, supra; Maxwell v. Wright, supra.* However, the trial rules adopted since those cases give both the trial court and this court wide discretion to correct errors or grant a new trial for or against all or any of the parties and upon all or fewer than all of the issues. Ind.Rules of Procedure, Trial Rule 59(J); Ind.Rules of Procedure, Appellate Rule 15(N). In addition, A.R. 15(N) states that "if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair." Clouse argues that since James' loss of consortium action is parasitic to Georgia's action such relief is impracticable because the issues presented are so interwoven and dependent on one another that they cannot be separated.

A claim for loss of consortium is derivative from the spouse's claim for injury, for without an injury to one spouse the other spouse would have no action. *Rosander v. Copco Steel & Engineering Co.,* (1982) Ind.App., 429 N.E.2d 990; *Arthur v. Arthur,* (1973) 156 Ind.App. 405, 296 N.E.2d

912, *trans. denied.* Indeed, some jurisdictions have held that when a defendant is not liable for a spouse's injuries, the other spouse is estopped from recovering for loss of consortium attributable to those injuries. *Stickney v. E. R. Squibb & Sons, Inc.,* (M.D. Fla.1974) 377 F.Supp. 785; *Sisemore v. Neal,* (1963) 236 Ark. 574, 367 S.W.2d 417; *Douberly v. OKefenokee Rural Electric Membership Corp.,* (1978) 146 Ga.App. 568, 246 S.E.2d 708; *Jones v. Slaughter,* (1974) 54 Mich.App. 120, 220 N.W.2d 63. However, we do not find the fact that James' loss of services or consortium claim is derivative from Georgia's claim for injuries requires a retrial of both claims. Instead, we believe that this fact militates against a retrial of James' and Georgia's claims.

In order for James to recover he must prove both liability and damages. In this case liability of Clouse for Georgia's injuries was established when the jury rendered a verdict for Georgia. The uncontradicted evidence in the record shows that those injuries caused James to lose to some extent his wife's services. Thus, when liability has already been determined and the evidence of loss of services or consortium is uncontradicted, a new trial for damages only will be required. *See Clark v. Wright,* (1976) 137 Ga.App. 720, 224 S.E.2d 825; *Smith v. Tri-State Culvert Manufacturing Co.,* (1972) 126 Ga.App. 508, 191 S.E.2d 92; *Kaelin v. Nuelle,* (1976) Mo.App., 537 S.W.2d 226. We find nothing unfair or impracticable about such relief. On the contrary, for us to require a retrial of both Georgia's and James' claims would be unfair to Georgia since she would have to go to great expense and expend much time to retry her claim against Clouse when there was no error in the verdict rendered for her (Georgia). Accordingly, upon remand a new trial shall be given to the issue of damages on James' loss of services claim.

Having found no error in the trial court's judgment for Georgia and against Clouse, this judgment is affirmed. The judgment against James on his loss of services claim is reversed, and a new trial is granted on the issue of damages.

Judgment affirmed in part and reversed and remanded in part. All costs assessed to Donna Clouse.

ROBERTSON, J., and YOUNG, J. (by designation), concur.