■  ESTHER SIIVONEN, as Executrix of PAAVO SIIVONEN, Deceased, Appellant, v. CITY OF ONEIDA et al., Respondents.— STALEY, JR., J.  Appeal from judgments of the Supreme Court in favor of defendants, the City of Oneida, New York and the New York Central Railroad Company, entered June 6, 1966 and July 5, 1966 in Madison County upon a verdict rendered at a Trial Term dismissing plaintiff's complaint against both defendants. On September 26, 1963 appellant's decedent, a paid fireman of the City of Oneida, was killed when the fire truck on which he was riding as a passenger was struck by the locomotive of a train operated by the respondent railroad. The fire truck which was responding to a fire call was operated by Captain Edward C. McCulley with appellant's decedent seated on the right seat of the open cab of the truck. At the time of the collision appellant's decedent was in the course of his employment as a fireman and was acting under the direction and control of Captain McCulley. Prior to the collision, the fire truck was driving northerly on Willow Street and approached the railroad crossing of the east-west bound tracks of the respondent railroad. The overwhelming evidence of the witnesses testifying was to the effect that, as the fire truck approached the railroad crossing, the warning railroad gates were down and closed, the gates' lights were flashing, and the red warning signal lights were flashing. Most of the witnesses testified that the train whistle was blown before the collision. The uncontradicted evidence indicates that the fire truck approached the crossing, slowed down behind an automobile which had stopped because of the crossing warnings, and then drove around the closed guard gate onto track two of the railroad tracks. After the fire truck passed around the closed gates, appellant's decedent stood up and looked to right, or east, from which the railroad train was approaching, and the accident happened instantly thereafter. The train struck the fire truck on the passenger door near the right front end of the truck and the driver and passenger were killed instantly. The sight distance to the east when the fire truck was two feet north of the guard gate, or 26 feet south of track two was approximately 4,000 feet. Trees and high bushes near the crossing obstructed visibility to the east and the sight distance to the east at a point 30 feet south of track two from the center of Willow Street was approximately 226 feet. Wrongful death actions were brought by appellant against the railroad and the City of Oneida and the estate of McCulley brought an action for wrongful death against

the railroad. The City of Oneida cross-claimed against the railroad for property damage to the fire truck. The jury returned verdicts of no cause of action in all the actions involved. Since appellant's claim resulted in a verdict of no cause of action, the jury had to find that either the railroad and the city were not negligent, or that the appellant's decedent was guilty of contributory negligence. The jury's verdict of no cause of action in the property damage claim of the city against the railroad, and in the claim of the truck driver against the railroad, indicates that the jury found that the railroad was not negligent or that the truck driver was guilty of contributory negligence. The record insofar as the respondent railroad is concerned contains overwhelming evidence that the railroad was not guilty of negligence. It is undisputed that the guard gate was down and that the red warning signals were operating. It is not contended that the train's speed of approximately 80 miles per hour was violative of any ordinance of the City of Oneida regulating the speed of trains through the city. In addition to the witnesses who testified that the train whistle was blown as the train approached the crossing, the railroad engineer and fireman testified that the whistle had been blown almost continuously from the time the train started to proceed through the five crossings in the city, of which the Willow Street crossing was the fourth, in the westerly direction the train was headed. The engineer also testified that his headlight was on and that the continuous bell mechanism had been activated. The railroad watchman was on duty in a shack to the northwest of the tracks. He testified that he went out on the crossing and signaled the truck to stop by waving a flag over head. Two other witnesses near the scene testified that he was on the crossing moving a flag from right to left in front of his body, and yet another witness testified that he stood off to the side of his shanty with the flag furled and held across his thighs. Many of the witnesses did not remember seeing the flagman, but no one testified that he in any manner signaled the truck to proceed onto the track. The established rule is that a railroad has a paramount right-of-way for the operation of its trains over public highway crossings, and may proceed at any speed not violative of local ordinances if it operates its train with reasonable care, and gives adequate and timely warning of the approach of its trains. (*Warner* v. *New York Cent. R. R. Co.*, 44 N. Y. 465; *Caledonian Ins. Co.* v. *Erie R. R. Co.*, 219 App. Div. 685; *McKelvey* v. *Delaware Lackawanna & Western R. R. Co.*, 253 App. Div. 109.) The evidence presented in this case discloses a complete absence of proof of any failure on the part of the respondent railroad to give adequate and timely warning of the approach of the train, or of any negligence in the operation of the train. In the light of the evidence presented, there is no question that a jury could have found the railroad free from negligence and, indeed, any contrary finding would have been against the weight of the credible evidence. Such a finding of freedom from negligence by the railroad in this case is further supported by the fact that in all three causes of action in which the railroad was a defendant, the verdicts were in its favor. The judgment appealed from dismissing appellant's complaint against the respondent railroad should be affirmed. In appellant's action against the city, it is urged by the city that the verdict of no cause of action was based on a finding of contributory negligence on the part of appellant's decedent. It is practically conceded by the city that the record supports a finding that the truck driver was guilty of contributory negligence as a matter of law, and that the city was negligent by reason of the negligence of its employee. We need not reach the question of appellant's decedent's contributory negligence since there is error in the charge requiring reversal. Appellant contends that the charge of the trial court contains reversible error as it affects the possible liability of the city. The court properly charged section 1170 of the Vehicle and Traffic Law setting forth the require-

ments of conduct of an operator of a vehicle approaching a railroad grade crossing where signals indicate the approach of a train, and section 1125 (subd. [a], par. 2) relative to the operation of a vehicle approaching a railroad crossing. At the request of the attorney for the McCulley estate, the court was requested to charge portions of sections 125 and 1104 of the Vehicle and Traffic Law which charges were excepted to by the attorney for the railroad. Section 125 which defines " Motor Vehicle " provides that " For the purposes of title four, the term motor vehicle shall exclude fire and police vehicles ". This exclusion relates only to the registration of motor vehicles, and the jury could have been misled or confused into believing that fire vehicles were not governed by sections 1170 and 1125 (subd. [a], par. 2) of the Vehicle and Traffic Law. In addition, the court charged portions of section 1104 of the Vehicle and Traffic Law which extends certain privileges to drivers of an authorized emergency vehicle, subject to conditions therein stated, particularly paragraph 2 of subdivision (b) which authorizes the driver of such a vehicle to " Proceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation." This request to charge was read by the attorney for the McCulley estate and excepted to by the attorney for the railroad. The court, however, failed to charge the condition stated in subdivision (d) of section 1104 which provided that " The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others." The failure to charge the conditions, upon which the privileges extended relied, could have misled or confused the jury particularly to the extent of the duties required of the city's employee, the fire truck driver. Furthermore, it is questionable whether section 1104 should have been charged at all. It sets forth specific enumerated privileges for emergency vehicles intended for the operation of such vehicles on streets or highways. The privileges extended were also conditioned upon requirements for the protection of other motorists. It was not intended to extend those privileges to railroad grade crossing or to entitle such emergency vehicles to violate sections 1170 or 1125 (subd. [a], par. 2) of the Vehicle and Traffic Law. Since these errors could have influenced the jury in determining the question of negligence as to the city, they were prejudicial to the appellant. The cumulative effect of these errors, therefore, requires a new trial of the issues involved in appellant's cause of action against the respondent city. Judgments modified, on the law and the facts, so as to vacate the judgments in favor of the defendant, City of Oneida, and to direct a new trial in the action against the city, and, as so modified, affirmed, with costs to appellant against the City of Oneida. Reynolds, J. P., Staley, Jr., Greenblott, Cooke and Sweeney, JJ., concur in memorandum by Staley, Jr., J.