**Alan D. BENDER, Ivan Bender, Defendants-Appellants,**

v.

**Jerry PEAY, Plaintiff-Appellee.**

**No. 1–481 A 154.**

Court of Appeals of Indiana, First District.

April 5, 1982.

George A. Porch, Bamberger, Foreman, Oswald & Hahn, Evansville, for defendants-appellants.

John A. Hamilton, David A. Bunner, Bunner, John & Heathcotte, Evansville, for plaintiff-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Alan and Ivan Bender appeal from the Warrick Superior Court's denial of their motion for summary judgment on Jerry Peay's claim for loss of consortium of his wife, her medical expenses, and his lost earnings occasioned by her injuries. We reverse.

## STATEMENT OF THE FACTS

On January 12, 1978, Barbara Peay, Jerry Peay's wife, was driving a 1969 Cadillac automobile in a westerly direction on a snow-covered county road in Posey County, Indiana. Alan Bender was driving a pick up truck which belonged to his father, Ivan Bender, in an easterly direction on the same road. The vehicles collided head-on near the crest of a small hill. Mrs. Peay sustained injuries in the accident which required hospitalization and surgery.

Mrs. Peay sued Alan and Ivan Bender for her personal injuries, medical expenses, and property damage. This suit was tried in the Vanderburgh Circuit Court and judgment was entered against Mrs. Peay on August 31, 1979. There was no appeal from that judgment.

Jerry Peay filed suit against Alan and Ivan Bender on December 5, 1979. In Count I of his complaint, which is the only count involved in this appeal, Peay sought damages for the loss of consortium of his wife resulting from her injuries received in the January 27, 1978, automobile collision, his wife's medical expenses, and his own lost wages allegedly resulting from her injuries. Alan and Ivan Bender moved for summary judgment on Count I of the complaint contending the judgment of the Vanderburgh Circuit Court in Mrs. Peay's action was dispositive of Count I. The supporting affidavit filed with the motion for summary judgment submitted to the Warrick Superior Court the entire certified record of the Vanderburgh Circuit Court in Cause No. 5780 in Mrs. Peay's personal injury claim. The record of Mrs. Peay's suit was made a part of the record in the case at bar. A motion in opposition to the motion for summary judgment was filed by Jerry Peay. The trial court denied summary judgment and certified the issue for interlocutory appeal.

## ISSUE

We have restated the sole issue raised by the Benders in this appeal as follows:

Whether a husband may maintain a separate action for loss of his wife's consortium after the wife's action for her injuries resulted in a judgment adverse to her claim.

## DISCUSSION AND DECISION

■ The Benders contend first that Jerry Peay's claim is derived from his wife's personal injury claim and thus was extinguished by the termination of her claim in their favor and second that even if Mr. Peay's claim is not derivative, the doctrine of collateral estoppel bars his claim. Judge Neal in his dissenting opinion addresses only the second contention raised by the Benders. Although we do not quarrel with his accurate discussion of the general rules of *res judicata*, we do not believe it is necessary to apply those rules to the present case since we find the prior adjudication of Mrs. Peay's claim precludes Mr. Peay's claim for loss of consortium.

In the present case, Mrs. Peay fully litigated her claim for damages for personal injuries against the Benders. That action resulted in a jury verdict adverse to her claim. A general verdict is a finding in favor of the prevailing party on all the material issues in the case. *Harker v. Gruhl*, (1916) 62 Ind.App. 177, 111 N.E. 457, *trans. denied*; 21 I.L.E., *Negligence* § 221 (1959). "A general verdict against a party is a finding against him upon all issues of which he assumed the affirmative." *Scoopmire v. Taflinger*, (1944) 114 Ind.App. 419, 430–31, 52 N.E.2d 728. Further, it has been held in negligence actions that a general verdict for the defendant amounts to a finding that the defendant was free from negligence or that the plaintiff was guilty of contributory negligence. *Siivonen v. City of Oneida*, (1970) 33 A.D.2d 934, 306 N.Y.S.2d 278; *Snider v. Jennings*, (1968) 11 Mich.App. 562, 161 N.W.2d 594; *Jones v. Kline*, (1955) Ohio App., 73 Ohio L.Abs. 354, 137 N.E.2d 611. Also, it has been held that a general verdict in favor of the defendant imports that all issues submitted to the jury were found in favor of the defendant. *LeBlanc v. Bray*, (1975) 168 Conn. 92, 357 A.2d 926. Thus, the verdict in favor of the Benders in Mrs. Peay's case established that the Benders were not liable for her injuries. If Benders were not liable for Mrs. Peay's injuries, how can they be liable to Peay for loss of his wife's consortium?

Our conclusion that Mr. Peay's loss of consortium claim is precluded by the adjudication of Mrs. Peay's claim is derived from the nature of a loss of consortium claim. In *Arthur v. Arthur*, (1973) 156 Ind.App. 405, 296 N.E.2d 912, *trans. den.*, this court recognized the derivative nature of a loss of consortium claim. The plaintiff-wife in *Arthur* brought a loss of consortium claim against Ira E. Arthur. The plaintiff's husband, Lemuel, had been injured while he and Ira were unloading a load of logs from Ira's truck. Lemuel and Ira were hauling the logs for Kenneth Welty. Lemuel filed a workmen's compensation claim for his injuries against Welty. The Industrial Board approved an agreement between the parties that Lemuel was to receive compensation payments. Subsequently the plaintiff filed her action against Ira. Ira's motion for summary judgment was granted by the trial court, and the plaintiff appealed. On appeal, Chief Judge Hoffman recognized the derivative nature of the plaintiff's claim and framed the issue before the court as follows:

"However, a cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer. Where, for example, the claim of the injured spouse against the alleged tort-feasor has been abrogated by statute, the right of the other spouse to recover for loss of consortium cannot exist. *Stainbrook v. Johnson Co. F. Bur. etc., et al.* (1954), 125 Ind.App. 487, 122 N.E.2d 884 (transfer denied). Thus, the crucial issue in the instant case is whether Lemuel has a valid cause of action against Ira."

*Id.*, 156 Ind.App. at 406, 296 N.E.2d at 913. Thus, this court determined whether Lemuel had a valid claim against Ira, for if he did not have such a claim his wife would not have a claim for loss of consortium. It was found in *Arthur* that a material issue of fact as to whether Lemuel had a valid claim against Ira existed and thus the entry of summary judgment was reversed.

The dissent in contending that *Arthur v. Arthur, supra*, is not controlling in the instant case states at 796:

"The issue was whether the plaintiff's husband had a *valid cause of action* against the fellow employee who allegedly caused his injury; if not the plaintiff's loss of consortium action was likewise invalid. This conclusion results from the fact that the remedy provided by the Workmen's Compensation statute is exclusive of all others, even those belonging to dependents and next of kin. Ind.Code 22–3–2–6. The issue was whether the plaintiff's claim was abrogated by statute, not whether it was foreclosed by *res judicata*."

A close examination of *Arthur* shows this court did not hold the plaintiff's loss of consortium claim to be abrogated by the

predecessor of Ind.Code 22–3–2–6.[1] Rather, the court determined whether the *injured spouse's* claim was abrogated by statute. If it was so abrogated, the loss of consortium claim would be invalid because of its derivative nature.

The fact that a loss of consortium claim derives its viability from the injured spouse's claim has been further exemplified in the recent case of *Clouse v. Fielder*, (1982) Ind.App., 431 N.E.2d 148. In *Clouse*, the husband's and wife's claims were jointly tried. The jury returned a verdict for the wife on her personal injury claim but failed to return a verdict for the husband on his claim for loss of consortium. The trial judge treated the non-verdict as an adverse verdict and entered judgment against the husband. After discussing the derivative nature of a loss of consortium claim, we reversed and remanded the case for a new trial only on the issue of the husband's damages saying at 160:

> "In order for James to recover he must prove both liability and damages. In this case liability of Clouse for Georgia's injuries was established when the jury rendered a verdict for Georgia. The uncontradicted evidence in the record shows that those injuries caused James to lose to some extent his wife's services. Thus, when liability has already been determined and the evidence of loss of services or consortium is uncontradicted, a new trial for damages only will be required." (Citations omitted.)

*See also, Lee v. Lafayette Home Hospital, Inc.*, (1980) Ind.App., 410 N.E.2d 1319, *trans. denied* (holding that the parents' action for loss of services of and medical expenses for their child, allegedly resulting from medical malpractice on the child, was derived from the child's malpractice claim and, therefore, subject to the provisions of the Indiana Medical Malpractice Act).

Since a loss of consortium claim derives its viability from the injured spouse's claim

for injuries, we fail totally to understand how a defendant could be liable to one spouse on a loss of consortium claim when it has already been determined he or she did not cause the other spouse's injuries. To hold otherwise by applying the rules of *res judicata* and indulging in hair splitting technicalities, such as failure of the defendants to seek joinder of the claims or technical definitions of "privity," is to promote form over substance. Common sense and logic demand a holding which precludes one from pursuing a claim which is totally derivative when the claim from which it is derived has been fully litigated, adjudicated, and denied. Indeed, courts in other jurisdictions have clearly and unequivocally held that where one spouse's claim for personal injuries is tried and lost, the other spouse's claim for loss of consortium is likewise precluded. *Stickney v. E. R. Squibb & Sons, Inc.* (M.D.Fla.1974) 377 F.Supp. 785 (Florida law); *Douberly v. Okefenokee Rural Electric Membership Corp.*, (1978) 146 Ga.App. 568, 246 S.E.2d 708; *Jones v. Slaughter*, (1974) 54 Mich.App. 120, 220 N.W.2d 63; *Sisemore v. Neal*, (1963) 236 Ark. 574, 367 S.W.2d 417. As the Georgia Court of Appeals stated in *Douberly*:

> " 'One spouse's right of action for the loss of the other's society or consortium is a derivative one, stemming from the right of the other.' [citation omitted]. Since appellees are not liable for injuries to appellant, they are not liable to appellant's wife for loss of consortium attributable to those injuries. Summary judgment was therefore proper."

246 S.E.2d 709.

The dissent relies, in part, upon *Rosander v. Copco Steel & Engineering Co.*, (1982) Ind.App., 429 N.E.2d 990, which held that one spouse's settlement and release of his personal injury action does not bar the other spouse from suing for loss of consortium where she was not a party to the settlement

---

1. Ind.Ann.Stat. 40–1206 (Burns 1965) stated: "Rights and remedies of employee under this act exclusive.—The rights and remedies herein granted to an employee subject to this act [§§ 40–1201—40–1414, 40–1505—40–1704] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death."

and had no notice of it. That case is clearly distinguishable in that no adjudication of liability or non-liability had been made by a competent tribunal. Here, Mrs. Peay's injury claim was fully litigated resulting in an adverse verdict.

Having found a loss of consortium claim cannot be brought when the injured spouse's claim has been adjudicated and lost, we reverse the denial of Benders' motion for summary judgment.

Judgment reversed.

ROBERTSON, J., concurs.

NEAL, J., dissents with opinion.

NEAL, Judge, dissenting.

I respectfully dissent from the opinion of the majority. The principles of collateral estoppel control this case and require affirmance of the trial court's judgment. The majority makes a change in the law which, in the interests of fairness and clarity, should be effected by rule.

The majority attempts to distinguish the Benders' derivative-claim argument from their collateral estoppel argument. I see no distinction. The essence of the derivative argument is that the issue of the Benders' liability to Mrs. Peay has been decided and cannot be litigated by her husband in a subsequent suit. This is a collateral estoppel argument. It raises the same competing policies of fairness to individual litigants and deference to prior judgments. The majority ignores these issues by adopting a rephrased version of the question.

The doctrine of *res judicata* is composed of two parts. The first, known as "estoppel by judgment" or "claim preclusion" addresses the prior adjudication of a cause of action as a bar to further litigation of that claim. *Town of Flora v. Indiana Service Corporation*, (1944) 222 Ind. 253, 53 N.E.2d 161; *State of Indiana, Indiana State Highway Commission v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172. In the instant case the Benders argue only that the second form of

*res judicata* applies. This doctrine is known variously as "estoppel by verdict," "collateral estoppel" or "issue preclusion." *Speidel, supra.* It holds that once an issue has been adjudicated the parties to that adjudication and their privies are bound by this determination in any subsequent suits between them on different causes of action. *Town of Flora, supra; Speidel, supra.* As applied to the instant case this would mean that the issue of fault, which was adjudicated in Mrs. Peay's unsuccessful action could not be litigated in this suit by her husband.

There are three prerequisites to the application of collateral estoppel: (1) a final judgment in a former suit between the same parties or their privies; (2) actual adjudication of the issues in the former suit; and (3) mutuality of estoppel. *Town of Flora, supra; Speidel, supra.* In this case the dispute concerns only the first prerequisite—identity of the parties or privity. The parties do not dispute that the issue of fault in this case was adjudicated in Mrs. Peay's suit. Under the facts of this case the mutuality of estoppel requirement will be satisfied if privity exists.[1]

The Benders' argument depends on their being able to demonstrate that some form of privity exists between Mr. and Mrs. Peay which would be sufficient to estop Mr. Peay from litigating the issue of fault. This precise question has not been resolved in Indiana, and other jurisdictions have reached conflicting results. *See* Annot. 12 A.L.R.3d 929; Tent. Draft No. 3 Restatement (Second) of Judgments § 93 (1976). The Benders have advanced two possible sources of privity: the marital relationship, and the derivative nature of the cause of action for loss of consortium.

The doctrine of *res judicata* serves two vital functions; it puts an end to litigation and protects the integrity of judgments by preventing inconsistent results. *Illinois Central Gulf Railroad Company v. Parks*, (1979) Ind.App., 390 N.E.2d 1078; *In re Estate of Nye*, (1973) 157 Ind.App. 236, 299 N.E.2d 854; *Nichols v. Yater*, (1970) 147

---

1. Estoppel is mutual if the one taking advantage of the prior judgment would have been bound if the judgment had gone the other way. *Speidel, supra.*

Ind.App. 29, 258 N.E.2d 66; *Citizens Loan and Trust Company of Washington, Indiana et al. v. Sanders*, (1933) 99 Ind.App. 77, 187 N.E. 396. It is equally important to preserve the right of each litigant to his day in court; hence, Indiana law maintains the requirement of identity of the parties or privity.

Only parties to a former judgment and their privies may take advantage of or be bound by a former judgment. *Tobin v. McClellan*, (1947) 225 Ind. 335, 75 N.E.2d 149; *Speidel, supra; Mayhew, Huston v. Deister*, (1969) 144 Ind.App. 111, 244 N.E.2d 448. In determining the parties for *res judicata* purposes the court looks beyond the nominal parties to the parties whose interests are directly involved. *Speidel, supra; Smith v. Midwest Mutual Insurance Company*, (1972) 154 Ind.App. 259, 289 N.E.2d 788. A party is one who is "directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment." 1 Greenleaf, Evidence, (15th ed.), § 523, *quoted in, Tobin, supra*, 225 Ind. at 344, 75 N.E.2d 149; *Mayhew, supra*, 144 Ind.App. at 121, 244 N.E.2d 448. Clearly Mr. Peay was not a party to the earlier action. As traditionally defined, a privy is "one who, *after the commencement of the action*, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Tobin, supra* 225 Ind. at 344, 75 N.E.2d 149; *Speidel, supra* at 1176, 1177 n. 5; *See Mayhew, supra*, 144 Ind.App. at 122, 244 N.E.2d 448.

A more liberal approach was taken in *In re Estate of Nye, supra*, where the court adopted the Restatement of Judgments' general analysis of privity found in § 83 and the comments which follow:

"Privies—General Rule.

A person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is, to the extent stated in §§ 84–92, bound by and entitled to the benefits of the rules of res judicata.

Comment:

a. Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The word 'privy' includes those who control an action although not parties to it (see § 84); those whose interests are represented by a party to the action (see §§ 85–88); successors in interest to those having derivative claims (§§ 89–92). There are other persons whose interests may or may not be less directly affected by a judgment because of their relation to one of the parties to the judgment; the effect of a judgment upon such persons is dealt with in Topic 3 (§§ 93–111).

The statement that a person is bound by or has the benefit of a judgment as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by and entitled to the benefits of all or some of the rules of res judicata by way of merger, bar or collateral estoppel. To determine when and to what extent he is bound or has rights, it is necessary to consider his relation to the parties to the action or to the subject matter of the action.

b. *Two sets of privies.* Where both parties to an action transfer their interests to others or where the action is controlled on both sides by persons other than the parties, both sides in the second action may be bound by and entitled to the benefits of the rules of res judicata although neither was a party to the first proceeding."

The following was also cited by the *Nye* court as a good description of the nature of privity:

"[T]here can be no such privity between persons as to produce collateral estoppel unless the result can be defended on principles of fundamental fairness in the due-process sense. A trial in which one party

contests his claim against another should be held to estop a third party only when it is realistic to say that the third party was fully protected in the first trial." *Wolff v. DuPuis,* (1963) 233 Or. 317, 378 P.2d 707, 710, *quoted in, Nye, supra,* 299 N.E.2d at 870. The *Wolff* court, also citing the Restatement § 83, found no privity between a husband filing a loss of consortium action and his wife who had prevailed against the same defendant in her personal injury action.

Although the Restatement § 83 approach used in *Nye* could have been used to expand the meaning of privity, recent cases fail to use it and rely on the traditional definition given in *Tobin* and *Mayhew. See, United Farm Bureau Mutual Insurance Company v. Wampler,* (1980) Ind.App., 406 N.E.2d 1195; *State of Indiana, Indiana State Highway Commission v. Speidel,* (1979) Ind.App., 392 N.E.2d 1172, 1176–77 n. 5; *Braun v. Loshe,* (1979) Ind.App., 390 N.E.2d 189; *Bailey v. Beekman,* (1977) 173 Ind.App. 154, 362 N.E.2d 1171. The *Nye* court applied the Restatement § 83 to the relationship between a representative and a real party in interest, which could have been classified as identity of the parties. *See, Speidel, supra* at 1176; *Smith v. Midwest Mutual Insurance Company,* (1972) 154 Ind.App. 259, 269, 289 N.E.2d 788. In short, our definition of privity has not yet expanded sufficiently to bind a plaintiff by a former judgment to which he was neither a named party nor a real party in interest, and exceptions to the privity requirement are few. Although many courts have abolished or limited the mutuality and privity requirements of collateral estoppel,[2] Indiana continues to adhere to them. *See, Speidel, supra* at 1176; *Mayhew, supra.*

The Benders argue that privity arises from the marital relationship or the derivative nature of the claim for loss of consortium. I know of no cases in which marriage alone has been considered a source of privity. We have held that neither marriage nor consanguinity creates privity unless it results in the descent of an estate. *Amann v. Tankersley,* (1971) 149 Ind.App. 501, 511, 273 N.E.2d 772. Marriage and other family relationships in themselves do not provide sufficient assurance that the interests of all parties have been fully and fairly represented.

I also reject the assertion that privity may result from the derivative character of claims for loss of consortium. Unlike wrongful death actions, loss of consortium actions are not wholly derivative. For example, a decedent's prior settlement of his personal injury claim is binding on his personal representative. *Haskell and Barker Car Company v. Logermann,* (1919) 71 Ind. App. 69, 123 N.E. 818. Generally, the personal representative stands in the decedent's shoes and can only bring an action if the decedent could have done so. *Hecht v. The Ohio and Mississippi Railway Company,* (1892) 132 Ind. 507, 32 N.E. 302; *Golding v. Town of Knox,* (1914) 56 Ind.App. 149, 104 N.E. 978. However, this court has recently held that one spouse's settlement and release of his personal injury action does not bar the other spouse from suing for loss of consortium where she was not a party to the settlement and had no notice of it. *Rosander v. Copco Steel and Engineering Company,* (1982) Ind.App., 429 N.E.2d 990.

Under *Rosander, supra,* placing actions in a derivative posture does not give one party the right to waive the rights of another. I believe that the same principle applies to the trial of derivative claims. Both the personal injury and loss of consortium actions arise from separate individual injuries, and each spouse is entitled to a day in court in which he or she can control the conduct of the litigation. The derivative nature of loss of consortium satisfies a different prerequisite to the application of collateral estoppel, *i.e.* actual litigation of the issues in a former action. The fact that the Benders' negligence toward Mrs. Peay has already

---

**2.** Identity of the parties or privity and mutuality are no longer prerequisites to the application of collateral estoppel in the federal courts. *Parklane Hosiery Co. Inc. v. Shore,* (1979) 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* (1971) 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788.

been litigated addresses only this requirement. However, this alone cannot create privity where Mr. Peay was not represented in the former action.

Three cases which are relevant to the idea that privity stems from derivative actions are: *United Farm Bureau Mutual Insurance Company v. Wampler*, (1980) Ind. App., 406 N.E.2d 1195; *State of Indiana, Indiana State Highway Commission v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172, and *Lukacs v. Kluessner*, (1972) 154 Ind.App. 452, 290 N.E.2d 125.

In *United Farm Bureau, supra*, the plaintiff, Wampler, sued for his personal injuries and property damages. The defendant, Stephens, filed a third-party complaint against his insurer, Farm Bureau, to resolve certain questions regarding his coverage. The action was severed at Farm Bureau's request, and when Stephens failed to answer interrogatories, it was dismissed with prejudice. Wampler later obtained a default judgment against Stephens. Wampler then brought proceedings supplemental against Stephens and against Farm Bureau as garnishee-defendant. Farm Bureau argued that the dismissal of Stephens' third-party action operated as a final adjudication on the merits which collaterally estopped Wampler from litigating the question of Stephens' insurance coverage. This court held that the dismissal of Stephens' action did not estop Wampler because the two were not in privity. It was also noted that Farm Bureau could have prevented the additional suit by joining Wampler in the third-party action under Ind. Rules of Procedure, Trial Rule 19. *Farm Bureau* is analogous to the case before us, in that Wampler's claim against Farm Bureau was derived from Farm Bureau's liability to Stephens. Like Mr. and Mrs. Peay, Stephens and Wampler were both interested in proving State Farm's liability, yet these common interests were not sufficient to create privity. The importance of privity to the protection of a prospective litigant's rights is clear; it would have been unfair to bind Wampler by a dismissal, which was the result of Stephens' apparent neglect rather than a full adversarial proceeding. Yet the dismissal constituted a judgment on the merits for collateral estoppel purposes. Had Mrs. Peay's claim been prosecuted with a similar absence of diligence or skill, Mr. Peay could now be bound if he were considered in privity with his wife. The traditional definition of privity retained by Indiana prevents such unjust results.

In *Speidel, supra*, a father filed suit for the wrongful death of his wife, the medical expenses of their three children and the loss of the children's services. After a jury verdict for the father, the three children sued for their personal injuries, and the trial court granted them summary judgment on the issue of liability. This court reversed. The court found identity of the parties to both suits due to the fact that the father as personal representative of the decedent represented his children as beneficiaries. The children, although not named parties in the first suit, were real parties in interest. The court appeared to favor the traditional definition of privity over the Restatement § 83 approach adopted in *Nye*, and it rejected the application of privity to the relationship between a representative and a real party in interest. Factors such as the derivative nature of wrongful death actions and the parent-child relationship were not mentioned as possible sources of privity.

In *Lukacs, supra*, there is dicta explicitly rejecting the extension of collateral estoppel to a situation similar to the one at bar. A minor injured by the defendant's automobile sued for his personal injuries. His father had previously recovered on a claim for loss of services and medical expenses. The trial court denied the minor's motion for summary judgment on liability. The *Lukacs* court reversed on a procedural ground after indicating that the law of *res judicata* would have required affirmance because privity and mutuality were lacking.

In support of their position, the Benders cite *Arthur v. Arthur*, (1973) 156 Ind.App. 405, 296 N.E.2d 912; and *Illinois Central Gulf Railroad Company v. Parks*, (1979) Ind. App., 390 N.E.2d 1078. Although both deci-

sions state that a loss of consortium action is derivative, neither is controlling in the instant case. *Arthur, supra,* addressed the nature of the loss of consortium claim in the Workmen's Compensation context. There were no *res judicata* issues. The issue was whether the plaintiff's husband had a *valid cause of action* against the fellow employee who allegedly caused his injury; if not, the plaintiff's loss of consortium action was likewise invalid. This conclusion results from the fact that the remedy provided by the Workmen's Compensation statute is exclusive of all others, even those belonging to dependents and next of kin. Ind.Code 22–3–2–6. The issue was whether the plaintiff's claim was abrogated by statute, not whether it was foreclosed by *res judicata.*

The majority argues that the derivative nature of loss of consortium controlled the plaintiff's right to sue. This was not the real issue. The Industrial Board had approved a settlement between the injured husband and his employer. The wife then sued a new defendant for loss of consortium, and the issue was whether the trial court had correctly granted summary judgment against the wife on the ground that the defendant was a fellow-employee of the husband. On appeal the wife contended that there were facts which supported the conclusion that the defendant was an independent contractor, who could be sued outside the Workmen's Compensation Act. However, under the predecessor of Ind. Code 22–3–2–6, *neither spouse* could have brought *any common-law action* against a fellow-employee of the husband. The resolution of this issue required no discussion of derivative actions or *res judicata.*

The case of *Clouse v. Fielder,* (1982) Ind. App., 431 N.E.2d 148, relied on by the majority, does not resolve the problem presented by the case at bar. In *Clouse* both spouses were parties to the suit. If the case had presented any collateral estoppel issues, the identity of the parties requirement would have been met.

Nor is *Illinois Central, supra,* dispositive. In that case the husband's loss of consortium claim was joined with his wife's personal injury action. The jury returned a general verdict in favor of the wife and against the husband, and he later brought his own personal injury suit. Since the husband was a party to both actions, the question of privity between the spouses was not discussed, and the defendant, also a former party, was estopped.

Public policies have given rise to exceptions to the privity requirement which arguably could be used to create additional exceptions or expand our definition of privity. However, an examination of these exceptions will show that the policies behind them are inapplicable here or are counterbalanced by other important considerations.

There are two well-recognized exceptions to the requirement of identity of the parties or privity. The first is the doctrine of virtual representation. It permits persons who have remote, contingent, or expectant interests in realty to be bound by a judgment affecting their interests although they were not parties to the suit. *Krick v. Klockenbrink,* (1968) 144 Ind.App. 55, 242 N.E.2d 848; *Groves et al. v. Burton,* (1954) 125 Ind.App. 302, 123 N.E.2d 204. Their interests must be properly represented by "persons who have the same interests and are equally certain to bring forward the entire merits of the question, so as to give the contingent interest effective protection." *Groves, supra* at 313, 123 N.E.2d 204. Arguably, since Mr. and Mrs. Peay appear to have the same interests, it could be said that Mrs. Peay represented her husband for the purpose of proving liability. But the same could be said of other plaintiffs who are injured by the same tortfeasor in the same tortious act. Both have a strong interest in proving the defendant's negligence, yet we do not deny one such plaintiff his day in court when another victim has failed to prove his case. In virtual representation cases the strong policy favoring stability in real estate titles prevails over the interest of the prospective litigant. In the case at bar there are no considerations important enough to outweigh Mr. Peay's interest in controlling his own cause of action.

Another relevant exception to the privity requirement is applied to cases involving derivative liability. When the liability of a defendant is dependent on or derived from one who is exonerated in a prior adjudication brought by the same plaintiff, the defense of collateral estoppel is available to the second defendant. *Mayhew, supra; Tobin, supra; see Speidel, supra.* This exception is also supported by considerations not present in the case at bar. Where derivative liability exists (*e.g.* between master and servant, indemnitor and indemnitee), inconsistent judgments may prevent one defendant from obtaining indemnification from the other. *See* Greenebaum, "In Defense of the Doctrine of Mutuality of Estoppel" (1969) 45 Ind.L.J. 1, 4. In the case at bar inconsistent results would not impose such a hardship.

There are several important judicial policies which would support the application of collateral estoppel in this case, such as the protection of parties from multiple suits, avoidance of inconsistent judgments, and judicial economy. Of these policies the first is, perhaps, the most important, and the Benders argue that the additional trial will be an unfair burden. However, I note that the Benders could have joined Mr. Peay in Mrs. Peay's action under Ind. Rules of Procedure, Trial Rule 19(A)(2)(b); apparently they failed to do so. Under the circumstances their argument that the Peays are being given "two bites from the apple" is unconvincing. While the prospect of inconsistent verdicts is disturbing, consistent results are not inherently fair. I would favor the right of a litigant to his day in court over the appearance of fairness. Finally, judicial economy, while a worthwhile goal, is not important enough to justify the extension of collateral estoppel to the case at bar. *See Rosander, supra.*

I would conclude that Mr. Peay must be permitted to litigate all of the issues in his claim. No small weight should be given to the 1979 decision of *Speidel, supra,* in which the traditional requirements of collateral estoppel, including privity and mutuality of estoppel, were scrupulously followed. That case was reversed for lack of mutuality of estoppel. Because the children would not have been estopped by an unfavorable judgment in the prior wrongful death action (such a judgment might have been based on their mother's contributory negligence, which could not be imputed to them), the defendant was not estopped to defend the children's subsequent personal injury action. Though highly technical, this analysis of Indiana law is correct, and the cases I have discussed above also adhered to the rules which were reaffirmed in *Speidel.*

It is still the law in Indiana that a litigant may assert or be foreclosed by collateral estoppel only if he was present in the prior action as a nominal party, a real party, or a privy in the traditional sense. In *Illinois Central, supra* ; and *Nichols, supra,* collateral estoppel was applied where both parties had been parties to the former suit. In *Tobin, supra; United Farm Bureau, supra* ; and *Lukacs, supra,* collateral estoppel could not be applied because one of the parties had not been present as a party or privy to the former judgment. As Judge Buchanan concluded in *Speidel,*

> "While the spirit of the Trial Rules is to encourage litigating all issues between the parties it is not mandatory that this be done as to a plaintiff with more than one cause of action. So the Supreme Court cases insisting on both privity and mutuality would seem to have vitality even though they were decided prior to the adoption of the present Trial Rules in 1971."

392 N.E.2d at 1179.

Although it may appear unfair to require a defendant to defend himself twice against virtually the same allegations, Trial Rules 19 and 20 would have prevented this result. Those rules permit parties to an action to bring in another party who may claim an interest in the subject matter of the action where his absence would leave any of the parties subject to multiple or inconsistent obligations. Neither the Peays nor the Benders chose to avail themselves of the benefits of those rules, though we assume they were aware of them. Each party took

the risk that the other would have a second chance to prove his case.

Excellent policy arguments can be made that the fair and efficient way to handle loss of consortium and similar actions is to require them to be joined with the underlying personal injury action of the spouse, parent, or child. Should this be found desirable, a rule change effecting this result would be more proper, as it would avoid any retroactive effect on existing cases. However, such action is not the prerogative of this court.

I would hold that Mr. and Mrs. Peay were not in privity, and therefore, collateral estoppel does not prevent Mr. Peay from litigating the issue of fault in his action for loss of consortium.