Lloyd L. **LAMBERT** and Dorothy S. Lambert, Appellants,

v.

Wayne L. **PARRISH**, Appellee.

No. 4-783A209.

Court of Appeals of Indiana,
Fourth District.

Sept. 4, 1984.

Rehearing Denied Oct. 15, 1984.

John E. Eisele, and Theodore F. Smith, Jr., Anderson, for appellants.

Danford R. Due, Donn H. Wray, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Robert W. Miller, Bagot, Free, Shearer & Miller, Anderson, for appellee.

MILLER, Presiding Judge.

As the appellant, the Reverend Lloyd Lambert, sat at his desk at work one February day in 1978, a man burst into his office and told him that the Reverend's wife, Dorothy, had been in a bad automobile accident at the end of the alley behind the office. Rev. Lambert ran from his office, and, as he headed up the alley, slipped on a patch of ice, injuring his back.

Claiming his injuries were proximately caused by the accident and his attempt to rescue his wife (the rescue doctrine) Rev. Lambert joined with Dorothy in suing Wayne Parrish, the driver of the other automobile involved in Dorothy's accident. The Lambert's four-count complaint alleged that, as a proximate result of Parrish's negligent operation of his automobile, Rev. Lambert and Dorothy had each suffered personal injury and loss of consortium and services. The trial court granted Parrish's motion for partial summary judgment on Count III, for Rev. Lambert's personal injuries, and on Count IV, for Dorothy's loss of consortium and services of her husband. After the trial court finalized its grant of partial summary judgment pursuant to Ind.Rules of Procedure, Trial Rule 56(C), the Lambert's brought this interlocutory appeal, claiming the trial court erred in ruling as a matter of law that Rev. Lambert's injuries were not proximately caused by any negligence by Parrish. We agree and reverse finding, contrary to the trial court, that the so-called "rescue doctrine" should be applied to this case on remand.

## FACTS

Viewing the evidence relevant to Counts III and IV of the complaint in the light most favorable to the non-movants in this case, as we must when reviewing the grant of a summary judgment motion, *Jones v. City of Logansport*, (1982) Ind.App., 436 N.E.2d 1138, 1143, it appears that at about 9:00 A.M. on February 28, 1978, the Rev. Lloyd Lambert was working in his second floor office at the Christian Center, in Anderson, Indiana. Rev. Lambert had been the director of the Center in the same location for over twenty-five years. The Center, a place of residence and rehabilitation for the homeless and others in need of help, is located on the west side of Main Street, facing east, and is bounded on the north by an alley that connects Main Street with Meridian Street, one block to the west. At about 9:00 that morning, unknown to Rev. Lambert, his wife, Dorothy, was involved in an automobile accident with Parrish at the west end of the alley, where it meets Meridian Street. Allegedly, the accident was caused by Parrish's negligence.

As Rev. Lambert prepared for a meeting that morning, a person he believes to have been an employee at the Center rushed into his office and excitedly told the Reverend, "Your wife is in a bad accident out back of the Center and is hurt." R. 335. Rev. Lambert, believing his wife was seriously injured and suspecting "the worst," bolted from his office, ran down the stairs two at a time, and exited the front door of the Center. He turned north and ran ten or twelve feet, then turned west into the alley. He had run another ten to fifteen feet down the alley when he slipped on a patch of ice, became airborne, and landed face down. This fall is alleged to be the cause of Rev. Lambert's back injury for which he seeks damages from Parrish.

Although there is some conflict in the evidence, the facts most favorable to the Lamberts indicate that as Rev. Lambert lay in the alley,[1] he looked up and saw his

---

1. At the hearing on Parrish's motion for summary judgment, the trial court received and recorded sworn testimony from Lloyd Lambert. On direct examination by his own attorney, Rev. Lambert stated that he saw his wife's car with people around it as he rounded the corner of the alley, before he fell. R. 381–82. Later, however, on cross examination by Parrish's attorney, Rev. Lambert stated that he witnessed this scene only after he had fallen on the ice.

wife's car at the other end of the alley, the hood partially raised and steam rising from the front end. Some people were standing around the car, including a man wearing a uniform at the car door. Rev. Lambert could not discern whether this man was a police officer or an ambulance attendant. Someone helped Rev. Lambert to his feet, and he proceeded more cautiously to the west end of the alley. When he arrived at the scene of the accident, Dorothy had been placed in an ambulance. She had struck her head on the steering wheel of her car and was stunned, though her injuries were in no way life threatening, as Rev. Lambert had believed. Rev. Lambert got into the ambulance with his wife and both were taken to the hospital emergency room.

The Lamberts' complaint against Parrish was in four counts, as described above. Parrish filed a motion to dismiss counts III and IV for failure to state a claim upon which relief could be granted, T.R. 12(B)(6), or in the alternative, for partial summary judgment, T.R. 56(B). The trial court granted Parrish partial summary judgment, concluding as a matter of law that, assuming Parrish's negligence, such negligence was not the proximate cause of Lloyd Lambert's injuries, and that the rescue doctrine did not apply to the facts of this case. We find the rescue doctrine does apply here and jury questions exist on the issue of proximate cause. Therefore we must reverse the trial court's grant of partial summary judgment. T.R. 56(C).

### DECISION

The issue presented by this appeal is whether the trial court correctly ruled as a matter of law that Lloyd Lambert's injuries were not proximately caused by the assumed negligence of Parrish.[2] Our standard of review when the grant of summary

judgment is challenged on appeal is well settled:

"Under Ind.R.Tr.P. 56(C), a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If there is any doubt as to the existence of a factual issue, the motion should be resolved in favor of the non-mover. In ascertaining the existence of any doubt, the contents of all pleadings, papers and affidavits are liberally construed in favor of the non-movant. Summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome. Even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action."

*Woodward Insurance, Inc. v. White*, (1982) Ind., 437 N.E.2d 59, 62 (citations omitted).

It is also clear that proximate causation is generally a question of fact, and, thus, typically not suitable for determination on summary judgment. *Department of Commerce v. Glick*, (1978) 175 Ind.App. 449, 372 N.E.2d 479; *New York Central Railroad Co. v. Cavinder*, (1965) 141 Ind. App. 42, 211 N.E.2d 502. "Only in cases where the facts are undisputed and lend themselves to a single inference or conclusion will questions of ... proximate cause become questions of law for the trial court." *Petroski v. Northern Indiana Public Service Co.*, (1976) 171 Ind.App. 14, 24, 354 N.E.2d 736, 744.

Regarding the nature of proximate cause itself, "it is well settled that for a negligent

R. 383. The deposition of Lloyd Lambert is silent on the matter.

**2.** Parrish also raises the issue of whether the Lamberts have waived all or part of their appeal by failing to present this court with a brief that complies with the requirements of Appellate

Rule 8.3(A). At a very minimum, the Lamberts' brief was in substantial compliance with the appellate rules and was sufficient to allow us to exercise our preference to decide cases on their merits. *See Barnd v. Borst*, (1982) Ind.App., 431 N.E.2d 161.

act or omission to be a proximate cause of injury, the injury need be only a natural and probable result thereof; and the consequence be one which in the light of the circumstances should reasonably have been foreseen or anticipated. [Citations omitted.]" *Elder v. Fisher*, (1966) 247 Ind. 598, 605, 217 N.E.2d 847, 852.

> "In addition, 'if the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm *or the manner in which it occurred* does not prevent him from being liable.' *Tabor v. Continental Baking Co.* (1942), 110 Ind.App. 633, 644, 38 N.E.2d 257, 261." (emphasis supplied)

*Geyer v. City of Logansport*, (1977) 267 Ind. 334, 340, 370 N.E.2d 333, 337. Because the rescue doctrine has an important impact on the analysis of both the negligence and contributory negligence issues in a case such as the present one, we now turn to the question of when that doctrine is applicable.

### Applicability of the Rescue Doctrine

Our supreme court recognized the viability of the rescue doctrine in our jurisdiction in *Neal v. Home Builders, Inc.*, (1953) 232 Ind. 160, 111 N.E.2d 280. There, the defendants were building a house directly across the street from the home of the plaintiff, his wife (the decedent), and their three sons. The plaintiff alleged that the defendants knew the neighborhood children, including his sons, played inside the dangerous, unfinished structure, and that the defendants, therefore had a duty to keep children out. One morning, the plaintiff's wife, recognizing the distressed cries of her youngest son,[3] left her home, ran across the street, and entered the unfinished structure. The boy had become trapped on a stepladder that led to the second story of the building. In trying to free her son from his plight upon the step-

ladder, the decedent lost her footing and fell to her death. The plaintiff sued the defendant-home builders. Regarding the plaintiff's theory of recovery, the supreme court stated:

> "If [plaintiff] is to recover under the allegations of his complaint, it must be done under the 'rescue doctrine.' This rule is clearly stated in 65 C.J.S., Negligence, § 63, p. 554:
>
> > 'One who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury.'
>
> It has been applied in the jurisdictions which have adopted it only where the situation which invites rescue is created by the tortious act of the defendant or by one for whom he is responsible. 65 C.J.S., Negligence, § 124, p. 738."

*Id.* at 167, 111 N.E.2d at 284.

Thus, putting off for the moment the impact of the rescue doctrine on the analysis of a negligence case, it appears the rescue doctrine applies where the tortious act of the defendant or his agent has created a "situation which invites rescue" by endangering the safety of the victim of the tort, and a third person is injured in the course of attempting to rescue the victim. In *Neal*, our supreme court did not apply the rescue doctrine, holding the defendants owed no duty to the injured child. Thus, there was no underlying negligence by the defendants that created a situation inviting rescue. *Id.* at 190–91, 111 N.E.2d at 295.

Due to the procedural setting of the present case, we must accept as true the allegations set forth in the Lamberts' complaint and in their testimony at the summary judgment hearing. *See Woodward Insurance, supra.* Thus, we must presume the following to be true: That Parrish's negligence caused the collision between his automobile and Dorothy's; that Dorothy was injured as a proximate result of Parr-

---

**3.** Our supreme court's apparent willingness to apply the rescue doctrine to the facts in *Neal* —had the requirement for application of the doctrine been present, *see* 232 Ind. at 190–91,

111 N.E.2d at 295—assures us that it is not necessary for application of the doctrine that the rescuer actually witness the initial harm to the victim.

ish's negligent act; that Parrish was, therefore, responsible for creating a situation that invited rescue by someone; and that Rev. Lambert was injured in the course of attempting to rescue Dorothy from her position of danger.

We therefore hold that the rescue doctrine applies to the facts of this case as we must presume them to be. The trial court held the doctrine inapplicable because "there did not exist unbroken continuity between the actions of Mr. Parrish and the injuries to Mr. Lambert ...." R. 336. While the continuity of events from the defendant's negligence to the rescuer's injuries may be relevant to the issue of the rescuer's contributory negligence, *see infra*, n. 5, such continuity is irrelevant to the question of the application of the doctrine in this case.[4] *See Neal, supra.*

### Proximate Cause

Because count III of the Lamberts' complaint alleges that Lloyd's personal injuries were the result of Parrish's negligence, we first observe that Indiana recognizes the following elements of actionable negligence: (1) a duty imposed on the defendant for the benefit of the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach. *See Miller v. Griesel*, (1974) 261 Ind. 604, 610–11, 308 N.E.2d 701, 706; *Neal*, 232 Ind. at 167–68, 111 N.E.2d at 284; *Petroski*, 171 Ind.App.

at 18, 354 N.E.2d at 741; 21 I.L.E. *Negligence* § 2 (1959).

The first two of these elements, duty and breach of duty, may be discussed together. It is generally recognized that a person does not owe a duty to all the world and, therefore, is not liable to everyone who may be harmed as a result of his negligent conduct. As Judge Cardozo pointed out in the classic *Palsgraf* decision: "'Proof of negligence in the air, so to speak, will not do.' ... The plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another." *Palsgraf v. Long Island Railroad Co.*, (1928) 248 N.Y. 339, 341–42, 162 N.E. 99, 99–100. The question of the existence of a duty owing by the defendant to the plaintiff is a question of law. *Miller*, 261 Ind. at 611, 308 N.E.2d at 706.

It is at this point in the analysis of a negligence case that the rescue doctrine has its initial impact. The doctrine answers the question of duty by providing that, as a matter of law, the rescuer is a foreseeable plaintiff to whom the defendant owes a duty of reasonable care, which is breached when the defendant creates the situation which invites rescue. As Judge Cardozo, then of the Court of Appeals of New York, stated in *Wagner v. International Railway Co.*, (1921) 232 N.Y. 176, 133 N.E. 437, the seminal rescue doctrine

---

**4.** Apparently, the trial court found the requirement of "unbroken continuity" in the opinion of Judge Cardozo in *Wagner v. International Railway Co.*, (1921) 232 N.Y. 176, 133 N.E. 437. There, the Court of Appeals of New York stated: "We may assume, though we are not required to decide, that peril and rescue must be in substance one transaction; that the sight of the one must have aroused the impulse to the other; in short, that there must be unbroken continuity between the commission of the wrong and the effort to avert its consequences. If all this be assumed, the defendant is not aided. Continuity in such circumstances is not broken by the exercise of volition. [Citations omitted.] ... The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion."

*Id.* at 181, 133 N.E. at 438.

In *Neal, supra*, our supreme court apparently rejected the notion that "unbroken continuity" requires the creation of the peril to the victim literally to occur within "the sight" of the rescuer. *See supra*, n. 3. Thus, that Rev. Lambert did not actually witness Dorothy's accident does not prevent application of the doctrine. Like the rescuer in *Neal*, Rev. Lambert was close enough to the scene of the injury that the trier of fact reasonably could have found that he was one of the class of potential rescuers who could have rendered aid to the victim of the defendant's tortious conduct. Thus, there was no break in the continuity of events to prevent application of the rescue doctrine occasioned by Rev. Lambert's injury while in the course of attempting to render such aid.

case: "Danger invites rescue. The cry of distress is the summons to relief.... The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer.... The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had." *Id.* at 180, 133 N.E. at 437–38; *cf. Hedgecock v. Orlosky,* (1942) 220 Ind. 390, 394–95, 44 N.E.2d 93, 95 ("[T]he human impulse of an ŏwner to save his property is such that a prudent effort to accomplish that end is reasonably to be expected by one whose negligence places such property in a situation of peril.")

■ Thus, under the presumed facts of this case, Parrish breached his duty of reasonable care to Rev. Lambert when he negligently collided his automobile into Dorothy's, endangering her safety. He may be liable to Rev. Lambert as though he had actually foreseen the Reverend's attempted rescue if it is determined that Parrish's negligence was the proximate cause of Rev. Lambert's injury.

■ As we have heretofore noted, proximate cause is almost always a question of fact for the jury. *Department of Commerce v. Glick, supra; New York Central Railroad Co. v. Cavinder, supra.* The trial court may decide the question of proximate cause as a matter of law only where the facts of a case are undisputed and lead to but one conclusion. *Petroski,* 171 Ind.App. at 24, 354 N.E.2d at 744. Here, we do not find the facts of the case to lead so inescapably to the conclusion that Parrish's negligence was not the proximate cause of Rev. Lambert's injuries as to remove the case from the domain of the jury. Although the injury to Rev. Lambert was somewhat remote—in that it would have been difficult to actually foresee or predict, *before the fact,* that upon learning of his wife's accident, Rev. Lambert would race down the stairs and out of his office, turn the corner into the alley and slip and fall on a patch of ice—it is clearly not necessary in order to hold Parrish liable that such injury be actually foreseen. As long as it can be said with reason that

Parrish's conduct was a "substantial factor" in bringing about Rev. Lambert's injuries, it is irrelevant that Parrish did not foresee nor should have foreseen the precise manner in which the Reverend's injuries actually occurred. *Geyer, supra,* 267 Ind. at 340, 370 N.E.2d at 337. If the facts pleaded are proved at trial, we do not believe it would be unreasonable as a matter of law for a jury to determine that Parrish's conduct was a substantial factor in producing Rev. Lambert's injury. The question before us is not sufficiency of evidence, but the total absence of any genuine issue of material fact. *See Bridgewater v. Economy Engineering Co.,* (1984) Ind.App., 464 N.E.2d 14, *trans. pending.* Rev. Lambert must have the opportunity to present evidence to the jury on the factual issues raised by the question of proximate cause. Therefore we must reverse the trial court's grant of partial summary judgment. T.R. 56(C).

We are supported in this conclusion by the decision in *Marks v. Wagner,* (1977) 52 Ohio App.2d 320, 370 N.E.2d 480. There, the defendant's automobile struck a bicycle ridden by the plaintiff's son. There was evidence the boy was in pain and bleeding, though it does not appear his life was actually in danger. The boy's companion ran approximately 200 feet to the plaintiff's house and told the plaintiff his son was "bleeding real bad." The plaintiff, thinking his son was dying, ran from the house, leaped from the front porch over the steps, fracturing his leg when he landed. The plaintiff sued the defendant motorist for his injuries, and the jury returned a verdict in the plaintiff's favor. The Court of Appeals of Ohio affirmed, stating:

"Although in these circumstances the evidence would permit the jury to determine it foreseeable, if not foreseen, that with this belief the plaintiff father would run to the aid of the son and thus expose himself to injury in a possible variety of other ways, actionable negligence could only exist if the evidence would also support a determination that it was foreseeable that in going to his son's aid the

plaintiff father might injure himself by jumping from his front porch. Such action by the father also relates, of course, to contributory negligence but, in the scheme of things, first relates to the issue of defendant's actionable negligence. In any event, in the circumstances here, these were all jury questions which the trial court and this court are not permitted to decide as a matter of law."

370 N.E.2d at 484; *see also Petroski v. NIPSCO,* 171 Ind.App. at 24, 354 N.E.2d at 744.

Thus, in the present case, Rev. Lambert must prove that Parrish's negligence was the cause of Dorothy's injuries, and that as a natural and probable consequence thereof, the Reverend went to Dorothy's rescue and was injured in doing so. Having proved this much, Rev. Lambert will have made a prima facie case of negligence against Parrish. The burden of going forward with the evidence will then pass to Parrish. Parrish can meet this burden in either of two ways.

First, he could negate the Lamberts' evidence that he was at fault in the collision with Dorothy. If Parrish was not the legal and proximate cause of Dorothy's injuries, he could not be liable for Rev. Lambert's injuries under the rescue doctrine, because he would not have been responsible for creating the situation which invited rescue. *Neal, supra.*

Second, Parrish could defeat Rev. Lambert's prima facie showing of negligence by proving the Reverend's contributory negligence. It is in the analysis of the contributory negligence defense that the rescue doctrine has its most significant impact on a negligence case. *See Marks,* 370 N.E.2d at 483. Given our conclusion that the rescue doctrine applies in the present case and the certainty that the question of contributory negligence will be litigated on remand, we feel obliged to express our views on the law of contributory negligence as modified by the rescue doctrine.

### Contributory Negligence

Contributory negligence is an affirmative defense to an action for negligence. *Kroger Co. v. Haun,* (1978) 177 Ind.App. 403, 416, 379 N.E.2d 1004, 1012. The burden of proving the plaintiff's contributory negligence rests upon the defendant. *Memorial Hospital of South Bend, Inc. v. Scott,* (1973) 261 Ind. 27, 31, 300 N.E.2d 50, 53; *see generally* 21 I.L.E. *Negligence* § 165 (1959). The plaintiff in a negligence case is contributorily negligent when he fails to exercise that degree of care for his own safety that a reasonable and prudent person would exercise in the same or similar circumstances. *Kroger,* 177 Ind.App. at 408, 379 N.E.2d at 1007. If such failure on the part of the plaintiff is a proximate cause of his injuries, then, under our pre-comparative fault law, the plaintiff is completely barred from recovery. *Smith v. Diamond,* (1981) Ind.App., 421 N.E.2d 1172, 1175. The conduct of the plaintiff alleged to be contributorily negligent is generally measured against an objective standard, *Kroger,* 177 Ind.App. at 409, 379 N.E.2d at 1008, which standard is modified, however, in measuring the contributory negligence of children, *see Smith, supra* and hospital patients suffering from physical infirmities, *see Memorial Hospital, supra.*

The rescue doctrine also operates to modify the objective standard of care applied to the question of the rescuer's contributory negligence in the following way: Rather than asking whether the rescuer conformed his behavior to that of the reasonable person under the circumstances as they *actually* were, we must inquire whether the rescuer's conduct was reasonable in light of the facts known to and *reasonably believed* by the rescuer concerning the peril of the victim. *Marks,* 370 N.E.2d at 484. This modification of the objective standard of contributory negligence applies both to the rescuer's decision to attempt to rescue the victim in the first place and to the manner in which the rescue attempt is carried out.

First, the defendant might attempt to avoid liability by showing that, even though he, the defendant, was negligent, the rescuer was contributorily negligent in attempting to to rescue the victim at all, because the victim was not in such *actual* danger that a rescue attempt was objectively necessary. Allowing the defendant to avoid liability in this way would place the risk of an erroneous determination of the true condition of the victim entirely on the rescuer. The better view, however, and better supported by authority, is that the rescuer is not barred from recovery if his *belief* that the victim requires rescue is *not unreasonable* in light of the facts and circumstances known to and reasonably believed by him.[5] *See Wagner v. International Railway Co.*, 232 N.Y. at 181, 133 N.E. at 438 ("Certainly [the rescuer] believed that good would come of his search upon the bridge.... The law cannot say of his belief that a reasonable man would have been unable to share it."); *Marks v. Wagner*, 370 N.E.2d at 484 ("[T]he issue of whether the proposed rescuer is thereafter contributorily negligent in attempting a rescue is determined ... by a consideration of the mental state of the rescuer, as to what he reasonably believed from the facts known to him the peril of the person to be rescued to be at that time."); *Ellmaker v. Goodyear Tire & Rubber Co.*, (1963) Mo. Ct.App., 372 S.W.2d 650, 658 ("The intending rescuer may act, with danger to himself if he reasonably had the right to 'assume or believe' that the life or limb of another person is in danger.")

In addition, the reasonableness of the manner in which the rescuer *attempts* the rescue must be viewed in light of the facts and circumstances known to and reasonably believed by the rescuer. Considering such facts and circumstances, the likelihood that the rescue will be successful and the gravity of the danger to the victim reasonably perceived by the rescuer must be balanced against the degree of risk the rescuer encounters in attempting the rescue.[6]

In summary, Parrish can defeat Rev. Lambert's prima facie case by negating the Lamberts' proof that Dorothy's injuries were the proximate result of negligence on his part; by showing that, given the facts and circumstances known to Rev. Lambert, it was unreasonable for him to believe that a rescue attempt by him was necessary; or by showing that, even given a reasonable belief in the need for rescue on Rev. Lambert's part, the degree of risk Rev. Lambert encountered in attempting the rescue was nevertheless unreasonable when balanced against the improbability of a successful rescue by Rev. Lambert and the

5. Among the circumstances bearing on the reasonableness of the rescuer's belief in the victim's need for rescue would be the rescuer's source of knowledge of the situation inviting rescue (whether from the rescuer's eyewitness view or a second-hand account); the lapse of time between the creation of the danger to the victim and the rescuer's knowledge of it; and the probability or improbability that the victim has already been rescued by others.

6. *Cf.* RESTATEMENT (SECOND) OF TORTS § 472 comment a (1965). The Restatement comment is written in terms of the incurred risk defense, while the rescue doctrine is more properly directed at the defense of contributory negligence. The difference is that incurred risk involves conduct wherein the plaintiff *subjectively* knows, understands and appreciates the risk involved, but nevertheless voluntarily encounters it. The reasonableness of the risk encountered is immaterial in the pure incurred risk situation. *Kroger Co. v. Haun*, 177 Ind.App. at 409, 379 N.E.2d at 1008. Contributory negligence, on the other hand, is *objectively* unreasonable behavior whereby the plaintiff fails to take proper care for his own safety. *Id.* By modifying the objective standard of contributory negligence, the rescue doctrine seems to fit best into what has been described as the "overlap" between these two defenses, "where the plaintiff voluntarily encounters a known *unreasonable* risk which no reasonable and prudent person in a similar situation would encounter." *Petroski v. NIPSCO*, 171 Ind.App. at 26, 354 N.E.2d at 745 (emphasis supplied). Indeed, because of the natural human impulse, recognized by the law, to answer the cry of distress (*see Wagner v. International Railway Co.*, 232 N.Y. at 180, 133 N.E. at 437) and because of the public policy favoring reasonable attempts to save human life and limb, it would seem that incurred risk would not be a defense in a rescue case unless the knowing and voluntary conduct of the rescuer was so unreasonable as to fall into the overlap area.

gravity of the danger to Dorothy as reasonably perceived by him. Rev. Lambert, of course, would be entitled to put on rebuttal evidence showing the reasonableness of his belief and conduct. We reiterate, however, that the burden of proving Rev. Lambert's contributory negligence, i.e., his unreasonable belief in the need for a rescue or his unreasonable conduct in the course of attempting the rescue, lies with Parrish. *See Memorial Hospital, supra.*

### Conclusion

We believe the trial court erred in ruling as a matter of law that Lloyd Lambert's injuries were not proximately caused by the assumed negligence of Parrish. We believe that genuine issues of material fact remain on the question of proximate causation, as well as on the issues raised by the rescue doctrine. It was therefore error for the trial court to grant Parrish partial summary judgment on count III of the Lamberts' complaint, for Lloyd's personal injuries. T.R. 56(C). Because count IV of the complaint, for Dorothy's loss of Lloyd's consortium and services, is deemed derivative of count III and was dismissed as such by the trial court, it must also be remanded for trial. *See Bender v. Peay,* (1982) Ind. App., 433 N.E.2d 788.

Reversed and remanded for further proceedings consistent with this opinion.

YOUNG, J., concurs.

CONOVER, J., concurs in result.